## UNITED STATES v. BOYD et al.

### (Circuit Court, W. D. Missouri, S. D.   October 6, 1902.)

### No. 189.

**1. OFFICIAL BONDS—CONSTRUCTION—BREACH.**

A bond given by a public officer, as a consul general of the United States, conditioned that he will faithfully discharge the duties of his office, and faithfully account for and pay over all moneys which shall come into his hands under any law, must be construed strictly, in favor of the sureties, with respect to the duties and obligations secured, and it cannot be held a breach of such bond that he failed to return to the treasury a sum overpaid him on his salary through mistake.

**2. PARTIES—MISJOINDER OF DEFENDANTS.**

An action by the United States against the heirs of a deceased public officer to recover a sum alleged to have been overpaid him on his salary account, on the ground that they received distributive shares of his estate, cannot be joined with one against the sureties on his official bond to charge them with liability thereon for the same sum, not only because it involves a misjoinder of parties defendant, but also the joinder of an equitable with a legal demand.

At Law.   On demurrer to petition.

William Warner, U. S. Dist. Atty., and A. S. Vanvalkenburgh, Asst. U. S. Dist. Atty.

Frank B. Williams and Thomas J. Delaney, for defendants.

PHILIPS, District Judge.   The petition substantially alleges that on the 9th day of October, 1890, Sempronius H. Boyd was duly appointed by the president of the United States and qualified as consul general at Bangkok, Siam, at a salary of $5,000 per year.   He executed bond as such consul general, with the defendants Thomas J. Delaney and Robert J. McElhany as sureties.   The condition of the bond, in so far as the same is material to this issue, is as follows:

"The condition of the above obligation is such that if the above-bounden Sempronius H. Boyd, appointed consul general of the United States at Bangkok, Siam, shall truly and faithfully discharge the duties of his said office according to law, and shall truly and faithfully account for, pay over, and deliver up all fees, moneys, goods, effects, books, records, papers, and other property which shall come to the hands of the said Sempronius H. Boyd, or to the hands of any person for his use as such consul general, under any law now or hereafter enacted, and that he will truly and faithfully perform all other duties now or hereafter lawfully imposed upon him as such consul general."

It is assigned for a breach of said bond that the said Sempronius H. Boyd drew drafts upon the United States for salary, and that he received as salary, for the period from July 1, 1893, to October 26, 1893, the sum of $1,605.76, which was in excess of the amount of salary then due him $2.50; and, further, that he charged and received as his salary for the period from July 12, 1892, to October 26, 1892, the sum of $1,453.83, whereas there was due him on account of such salary only the sum of $726.90; that during said period from July 12,

¶ 1. Liabilities of sureties for acts of officers under color of office, see note to Chandler v. Rutherford, 43 C. C. A. 222.

1892, to October 26, 1892, he was absent from his post of duty upon his statutory leave; that during such period of such absence it is provided by law and the existing consular regulations that when such consul general is absent on leave the vice consul officer acting in his place is entitled to one-half the compensation of the office from the day of assuming its duties, unless there is an agreement for a different rate. It is then alleged that during such absence the vice consul general acting in his place made no waiver or agreement for a different rate of payment than is provided in the regulations aforesaid, and he was therefore entitled to one-half the compensation of the office during said period, all of which was paid to the said Sempronius H. Boyd; that afterwards said vice consul brought suit against the United States for his compensation, and recovered therein the sum of $726.90, which has been paid by the United States. It is then alleged that the said Sempronius H. Boyd has failed and refused to account for and pay over to the United States said excess of salary so paid him. After allowing upon said indebtedness a credit of $27.78 on account of contingent expenses due him, judgment is asked for $701.62. It is further alleged that said Sempronius H. Boyd died testate the 1st day of July, 1894, leaving as his heirs and personal representatives his widow, the defendant Margaret M. Boyd, and his daughter, the defendant Cordie B. Delaney; that said Margaret M. Boyd thereafter qualified as his executrix in the probate court of Greene county, Mo., on the 25th day of September, 1894; and that she was finally discharged therefrom on the 25th day of September, 1897. As grounds of recovery against Mrs. Boyd and Mrs. Delaney it is alleged that they received by inheritance from said Sempronius H. Boyd a large amount of property, both real and personal, and now hold the same. The defendants demur to the petition.

As the defendants Thomas J. Delaney and Robert J. McElhany are sued as sureties on the bond, no recovery can be had against them unless the acts alleged constitute a breach of the bond within the spirit and intent of its conditions. There is no claim made that the consul general had not faithfully discharged the duties of his office, other than the alleged failure to return to the government the excess of salary paid him. Recovery, therefore, on the bond can only be sustained on the ground that the overpayments come within that provision of the bond which required the consul general to "account for all moneys which shall come to his hands as such consul general."

It is among the well-established rules of law respecting the liability of sureties on such bonds that the liability "is not to be extended by implication beyond the terms of the contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation he is bound, and no further." Miller v. Stewart, 9 Wheat. 702, 6 L. Ed. 189. In short, the obligation of the surety cannot be extended to other subjects than those expressed or necessarily included in his contract; and the intent and latitude of the contract of suretyship must be ascertained by a fair and liberal construction of the instrument, in the face of what appears to have been the intention of the parties when the contract was made, to be gathered from the expressions contained therein and from the nature of the transaction.

So, when a bond is given by a public officer, such as a consul general, and his duties are prescribed by statute or regulations of the department, the terms and phrases of the bond are to be construed strictly with reference to the duty imposed. Blair v. Insurance Co., 10 Mo. 566, 47 Am. Dec. 129; People v. Pennoch, 60 N. Y. 421.

As consul general representing the United States at Siam, certain fees and moneys would likely come to his hands as such consul general, in which he would have no personal interest except the amount of his authorized commission. Such moneys in his hands would be impressed with a public trust, to be accounted for and paid over by him to the treasury department of the United States. It was only such moneys as in the faithful performance of his official duties, to be rendered in an accounting of his stewardship, the undertaking of the bondsmen made them responsible for in the case of the consul's default. The matter of his salary, which was his individual perquisite, in its very nature could not have been the subject-matter within the object and purview of the bond. It was not necessary that the government should exact of its consul a bond for money the government should pay him for his salary. Such money when paid by the government was not to be taken into an accounting between him and the government. It could not have been anticipated by, or within the contemplation of, the sureties that the treasury department in remitting salary to the consul general would make a mistake and send him too much. The bond was not to cover the blunders of the disbursing officers of the government, but only the defalcations of the consul general as such in accounting to the government for moneys coming to his office in the course of his official duties.

Reading the allegations of the petition as a whole, the inference is clear enough that the overpayment to Mr. Boyd was a mere mistake of the officer of the disbursing department. Presumably the department at Washington would know when his salary was due and how much. The proper department at Washington was advised of Boyd's absence from his post, and that he must have left some one in charge thereof. It is not alleged that he neglected to advise the proper department of his absence, or that he practiced any deceit or fraud in obtaining the excess of salary. His bondsmen, in my judgment, are no more responsible for such overpayment than they would have been for money paid Boyd by mistake belonging to somebody else.

In State v. Anthony, 30 Mo. App. 638, 641, the court, speaking to a kindred principle, said:

"The sureties in the bond become bound to answer for the delinquencies of Bayer in his character of administrator, and not in his subsequent character of trustee or other custodian of the funds belonging to the minor heirs committed to him by an order of the probate court."

So here the sureties of Boyd became bound to answer for his delinquencies in his character as consul general, and not in his character as trustee, by implication, of the funds belonging to the United States, paid to him by one of its departments by mistake on account of his personal salary, not received or retained by him in his official capacity in the performance of a duty imposed upon him by statute or the regulations of the department.

Unquestionably Boyd or his legal representatives was liable in an action for money had and received for the amount so overpaid him by the government, but not in an action for a breach of his bond as consul general.  If his estate under administration has been finally settled, and the executrix discharged, and his heirs as distributees received property from his estate liable for this debt, a separate appropriate action might lie against them for restitution.  But, as such distributees were not parties to the bond, there is no legal connection or community of interest between them and the sureties on the bond, and therefore there is in law a misjoinder of parties defendant.  And there is in the petition a mingling of matters of law and equity in the separate nature of the liability of the sureties and Boyd's heirs.  The action on the bond is essentially an action at law for a breach of its conditions, whereas the liability of Mrs. Boyd and Mrs. Delaney, as heirs of the estate, is equitable in its character, and arises without any breach of the official bond of Mr. Boyd.

The demurrer is sustained.