**MARYLAND CASUALTY CO. v. KANSAS CITY, MO.**

No. 12163.

Circuit Court of Appeals, Eighth Circuit.

July 2, 1942.

William E. Durham, of Kansas City, Mo. (J. L. Milligan, Clifford B. Kimberly, and Milligan & Kimberly, all of Kansas City, Mo., on the brief), for appellant.

Ilus M. Lee, Asst. City Counselor, of Kansas City, Mo. (William E. Kemp, City Counselor, of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The plaintiff below, Kansas City, Missouri, is a municipal corporation of the State of Missouri, existing under and by virtue of the Constitution and laws of said state. Pursuant to said constitution and laws plaintiff, appellee herein, framed and adopted a charter for its own government, which charter declared to be a public Act, became effective April 10, 1926, and since that date has been in full force and effect. In accordance with the provisions of said charter, one Edward P. Connor was, on May 1, 1930, duly appointed auditor of said city and legally qualified; and during all the period of time from May 1, 1930, to April 17, 1940, was in charge of the duties of said office.

Under provisions of the charter the auditor of the city was required to give a surety bond for the faithful performance of his duties as such officer; and by ordinance the amount of the bond was fixed at $10,000. March 31, 1932, Connor as principal, and appellant Maryland Casualty Company as surety, executed the official bond sued on, conditioned that "if the said Edward P. Connor as aforesaid, shall during the time he shall fill said office or position after this date faithfully discharge and perform all of his duties as Auditor of Kansas City, then this obligation shall be void; otherwise to remain in full force and effect".

Section 13 of the charter provides that the city council shall appoint an auditor who shall serve during its pleasure, and thus describes the duties which he undertakes faithfully to discharge and perform: "His duty shall be to keep the Council informed as to the work performed, methods and financial affairs of the city. He shall not be responsible for the keeping of accounts. He shall carry on a continuous investigation of the work of all departments of the city, and shall report from time to time, and at least once each year, the methods and results of their operations. He shall make such other investigations as the Council may direct. He shall have access to all books and records of all departments of the city. He shall have power to summon before him any officer, agent or employe of any department, or any other person, and examine him upon oath or affirmation, which oath or affirmation he may administer. He shall certify to the correctness of all financial reports before such report shall be regarded as official".

By section 131 of Ordinance No. 52820 of the Administrative Code under the city charter salaries and compensations of employees in the city service are established. The second paragraph of this ordinance expressly provides that: "No officer, appointee or employe in the city service shall

be entitled to any additional salary or compensation other than as expressly provided by the charter or this ordinance for any duty performed or service rendered for the city or in or about its business or affairs, and this regardless of the office or position held or work done or service rendered".

The original complaint was filed and summons issued thereon October 12, 1940. The second amended complaint, upon which the case was tried to the court, was filed January 21, 1941. The grounds for recovery are stated in two counts. Under the first count recovery is sought for payments made to and accepted by Connor the auditor, within the period covered by the bond, of additional salary and compensation other than as expressly provided by ordinance. Under the second count recovery is sought for payments made to W. H. McCormick, assistant auditor, in addition to the salary allowed to him by ordinance, and also for similar payments made to other employees in the auditor's office. These payments were made from various bond funds. The auditor was aware of all these transactions, and of the applicable charter provisions, and made no report concerning them to the city council.

The general finding of the trial court is embraced in the following conclusion: "It was the duty of the auditor to keep the city council informed as to the work performed, the methods and financial affairs of the city. It was his duty to refrain from committing any act or failing to report the commission of any act which constituted a violation of the charter or ordinance of the city relative to the city's finances".

On his findings of fact, which are amply supported by the record, in which counsel for appellant concedes that "the evidence was substantially without conflict", the trial judge concludes that recovery should be allowed in the sum of $5,608.49 on the first count, and in the sum of $4,775 on the second count. He entered judgment in the sum of $10,000, the full penalty of the bond, together with interest from and after October 12, 1940, amounting to $366.66.

In contending that the auditor's bondsman is not liable for the items upon which judgment was rendered, the main points relied upon by appellant are:

1. The receipt and retention of moneys by Connor and McCormick were not a breach of the bond.

2. Defendant not liable for moneys received from the City Manager's Emergency Fund prior to three years before the commencement of this action.

3. Connor's approval of requisitions for warrants drawn on the general fund was not a breach.

4. Auditor's failure to report payments in detail did not cause the loss complained of.

5. The rights of the parties have been heretofore adjudicated, and the auditor and his bondsman vindicated of liability for the "Emergency Fund" items.

6. Defendant has been released in whole or in part of all items for which the district court held it responsible.

7. The court erred in entering judgment in excess of the face of the bond.

All substantial assignments of error may be disposed of without strict confinement to these headings. The charge in the complaint to which the first assignment applies was the receipt and retention by the auditor of additional compensation over the salaries and compensation fixed by ordinance and the failure to report such financial conditions to the council. As found by the trial judge the auditor's salary so fixed was $4,000 per annum for all the period from March 31, 1932, until April 17, 1940, except for two short periods when, by ordinance, his salary was fixed at the rate of $2,000 per annum. During the period covered by the bond he received extra compensation, which was not barred by limitations, in the sum of $9,525 not authorized by ordinance. During this period certain salary reductions were made, not by ordinance, but at the direction of the City Manager, who required each employee to sign an application for leave of absence without pay. The leaves were granted but the employees continued with their duties.

The trial judge found that, in the case of the auditor, the salary provided by ordinance would, if paid during these reduction periods, amount to $3,916.51, and found that appellant could be held for only the amount which was in excess of the salary fixed by ordinance. He therefore reduced the said sum of $9,525 by $3,916.51, leaving $5,608.49 as the recovery allowed on Count One, plus interest.

In the case of Assistant Auditor McCormick, the salary as fixed by ordinance was $3,600 per annum except for two short periods when it was reduced, also by ordi-

nance. Salary reductions not made by ordinance reduced his ordinance salary by $3,525. The excess compensation received by McCormick during the period covered by this bond, and within three years next before the filing of this action, and the recovery of which was consequently not barred by the Statute of Limitations, was found to be $8,300. Applying the same principle heretofore noted in the case of the auditor, this $8,300 was reduced by $3,525. Hence the recoverable amount of the excess payments to McCormick was $4,775. No excess payments were found to have been made to the other employees in the auditor's office, hence the recovery on the Second Count was fixed at $4,775 plus interest. The total amount of recovery on both counts, plus interest from October 12, 1940, was $10,764.15. The judgment entry ordered that upon payment to plaintiff of $10,000, the full penalty of the bond, with interest from and after October 12, 1940, amounting to $366.66, or a total of $10,366.66, and all costs, "this judgment as to both counts shall thereupon and simultaneously therewith stand and be satisfied in full".

 Connor, as found by the district judge, at all times knew what salary was fixed by ordinance for his own services and the services of the employees in his office. He knew the provisions of the city charter respecting salaries; and the engagement of a surety on such an official bond is entered into with reference to the law which defines the duty of the officer. As held by the Missouri Supreme Court in Smith v. Pettis County, 345 Mo. 839, 136 S.W.2d 282, the right of a public official to compensation must be founded on a statute; and a statute granting a public official compensation should be strictly construed against the officer. Furthermore, the right of a public officer to be compensated by salary for the performance of duties imposed upon him by law, does not rest on any theory of contract, express or implied, but is purely a creature of statute; and "he who accepts public office takes it cum onere." Maxwell et al. v. Andrew County, 347 Mo. 156, 146 S.W.2d 621, 626. In the latter case it was held that the surety on a sheriff's official bond was not liable to the county for the amount of illegal items of compensation which had been paid to the sheriff under a mistake of law honestly made by the county. A similar holding was made in State ex rel. v. Moeller, 48 Mo. 331, founded upon construction of a statute. The holding in Maxwell v. Andrew County follows State v. Gomer et al., 340 Mo. 107, 101 S.W.2d 57, 68, 69, in which the court refused to hold a surety for "an overpayment, if there was one, due to an honest mistake, by both the officer who made the claim and the county court that approved it, as to the meaning of a statute containing indefinite, inconsistent, and contradictory statements in stating the basis for computing the compensation, and in no way due to a false statement of fact". Nevertheless the court stated that it did not mean to hold that any officer is entitled to keep more than he is allowed to collect by law for his services, and it further held that in that case "it is not possible to definitely determine from the agreed facts, which were the only facts before the trial court, whether or not this assessor faithfully performed all of the duties of his office;" although the bond "undoubtedly would be breached either by a failure to perform required duties, or willful or intentional improper and wrongful conduct in the performance thereof". 101 S.W.2d pages 67 and 69. Compare Nodaway County v. Kidder, 344 Mo. 795, 129 S.W.2d 857. Public officers claiming compensation for official duties performed must point out the statute authorizing such payment. Compensation paid to a public officer, when not authorized by law, or in excess of compensation authorized by law, may be recovered from the principal and his surety.

 The bond sued on is conceded to be a Missouri contract. It is held in that state that for wrongful acts done either by virtue of office or under color of office sureties are liable, State ex rel. v. Roth, 330 Mo. 105, 111, 49 S.W.2d 109; City of Festus v. Kausler, Mo.App., 105 S.W.2d 646, 649. This court has so declared the law to be by the great weight of authority. United States v. Perkins, 8 Cir., 280 F. 546.

The record shows that the payments made to and accepted by Connor in excess of his salary fixed by ordinance came from two different sources or funds—the General Fund, and what is known as the City Manager's Emergency Fund. From the former, $562.50 was received by the auditor within three years prior to October 12, 1940; from the latter, $8,962.50. The City Manager's Emergency Fund was an account carried on the books of the First National Bank of Kansas City, Missouri, stipulated to be made up and consisting wholly

of deposits of public monies and funds belonging to and the property of Kansas City, Missouri. Said deposits were made by H. F. McElroy during the time he was City Manager of said city. The account was opened October 12, 1931, and was closed April 18, 1939. For this fund and its operations no provision was made by charter or ordinance. It was an entire stranger to both, and the bank in which it was deposited was not a depositary of the city. Public officers hold public funds as trust property, without authority to pass title thereto otherwise than as provided by law; and all persons dealing with public officers and public funds are charged with knowledge of statutory provisions relating to such depositories and officers.

The evidence shows that the clerk of the Municipal Court of Kansas City was killed in a highway accident on Labor Day of 1931. The City Manager directed Connor to take charge of the Traffic Bureau which was a so-called department for collecting traffic fines under the control of the clerk of the municipal court.. This department had been established by ordinance, but no official head had been created, nor salary or compensation fixed by the council. The matter had been handled by the clerk of the municipal court. A new clerk was subsequently appointed, but the City Manager demanded that Connor continue in the performance of this service. During his term of office as auditor he was paid therefor, in addition to his salary as auditor fixed by ordinance, a total of $8,962.50 by check drawn by the City Manager or his secretary on the City Manager's Emergency Fund in the First National Bank. Appellant claims that this service was not performed in his capacity as auditor and was therefore not within the coverage of his bond.

So, in the case of the assistant auditor, McCormick was asked by the City Manager to supervise the keeping of the bond account, consisting of funds derived from the sale of the bonds issued for certain public improvements, which was under the general supervision of the Director of Public Works. The trial court finds that there was neither charter provision nor ordinance providing for such a position or salary therefor. McCormick received for those services an additional total of $25,900 during the period covered by the bond. As in the case of the traffic bureau service, appellant contends that the acceptance of this additional compensation is not covered by the bond in suit. The trial court found that the auditor, personally or by direction, issued and had full knowledge of the requisitions for all warrants for extra compensation of all persons herein involved, except that the requisitions for those extra services of Mr. McCormick, which were paid out of the bond fund, were made by the director of public works; but that the auditor knew at the end of each month what warrants had been issued and what payments had been made to McCormick during that month, and knew that the payments were for extra services of McCormick in connection with the administration of the bond funds.

Fortunately we are not left to surmise nor to uncharted construction of charter and ordinance provisions applicable to these and other exceptions in this appeal. In Coleman v. Kansas City, Missouri, 348 Mo. 916, 156 S.W.2d 644, 648, the plaintiff Coleman as trustee for sixty-four city employees brought suit to recover compensation alleged to be unpaid. The allegation of the city that some of these employees had been illegally paid compensation for extra services in an amount in excess of the salary or compensation fixed by ordinance was challenged on the ground that such undertakings by the city were not acts which the city had no power to perform, but were merely defective exercise of a valid power. The Supreme Court of Missouri held that Kansas City is expressly prohibited from paying for such extra services. Judge Clark in his opinion says:

"Section 130 of the salary ordinance is, in part, as follows: 'Until otherwise provided by ordinance and except as otherwise may be provided in the charter, the positions, officials, and employes in the city's service and respective rates of salaries or compensation for all services rendered by any such, whether in the capacity named or other, may be but shall not exceed the numbers or amounts respectively herein designated.'

"Section 131 of the same ordinance includes the following: 'No officer, appointee or employee in the city service shall be entitled to any additional salary or compensation other than as expressly provided by the charter or this ordinance for any duty performed or service rendered for the city or in or about its business or affairs, and this regardless of the office or position held or work done or service rendered.'

"As we construe the above provisions of the ordinance, the city was prohibited from paying any officer or employee more than the scheduled salary for one office, even though he may have performed duties pertaining to one or more other offices or duties which had not been assigned to any office. This prohibition destroyed the right which otherwise the city may have had to pay, and these claimants to receive, extra pay for extra services.

" 'The equitable doctrine which prevents the recovery of money paid for services actually rendered to a city, although not authorized by law, does not apply where the payments were made in violation of a law which expressly forbade them.' 43 Corpus Juris 706, § 1185."

We fully concur in these conclusions which are in harmony with the great weight of authority.

■ "Under charter of Kansas City, council which fixed compensation of all officers and employees could not confer such powers upon city manager by mere failure to act by complete abdication of such functions, or even by attempting to delegate them." State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S.W.2d 532.

■ Appellant which undertook this suretyship, with full knowledge presumably of these unambiguous charter provisions, is bound jointly with its principal; and this exception to the conclusion of the trial judge is accordingly rejected. While the acceptance of illegal salary payments by the auditor out of the City Manager's Emergency Fund, as from any other monies and property of Kansas City, must concededly constitute an unfaithful discharge of duty and consequently a breach of his official bond, nevertheless counsel for appellant also insist that defendant is not liable for monies received from that source prior to three years before the commencement of this action. Section 1015 of Article 9, R.S. Mo.1939, Mo.R.S.A. § 1015, fixes the three year limitation to actions against a public officer upon a liability incurred by the doing of an act in his official capacity, or in virtue of his office, or by the omission of an official duty.

Section 1012 of the same Article, Mo. R.S.A. § 1012, provides that "for the purposes of this article, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment".

There was never any city record or entry of an account or fund known and designated as "City Manager's Emergency Fund", nor any account or fund of a similar designation; nor is any record or entry of any payment to auditor Connor from any such account or fund found to exist in the records of the Commissioner of Accounts of Kansas City, Missouri. The uncontradicted testimony of Miss Margaretta Canine, Secretary to City Manager McElroy, is that all the checks and payments to Connor were signed by her, and were from said Emergency Fund at the City Manager's direction. She states that there was no official record of the Emergency Fund kept in any City Department to her knowledge. In the City Manager's office the only record kept was on the check stubs, and the checks themselves when returned from the bank. From time to time the City Manager would ask her for these check stubs, the cancelled checks, and the bank statements, and would take them home with him. They were never returned. No other record of this fund was kept in that office. After his resignation, he did not return, but asked for the last particular checks, check stubs, and statements that remained in his office. They were taken to him at his house at his request by Miss Canine and by Assistant Auditor McCormick. Shortly after his resignation what is now known became ascertained by an official audit of the city's fiscal books and records by certified accountants.

All the facts pertaining to the matters now under consideration were known to the city auditor—the official appointed to safeguard the city from damages which might be sustained from abuse of its charter provisions—the officer whose primary duty was to keep the council informed as to the work performed, and the financial affairs of the city, the methods employed and the results of their operations. He was equipped with full powers of investigation as the council might direct. He elected to disregard his responsibilities, and became a mere subsidized utility man of the City Manager instead of a guardian of the public welfare.

■ Counsel for appellant cite City of St. Joseph v. Wyatt, 274 Mo. 566, 203 S.W. 819, in support of their contention; but that case has no application to this state of facts. There it is pointed out that the City Comptroller could at any time by examining

the City Treasurer's books, and counting his cash in the vault have ascertained how the treasurer stood with the city, and the city was therefore barred from recovering from the bondsman money embezzled prior to three years before suit was filed on the bond. Here the city, through nonfeasance, misfeasance, or malfeasance on the part of its official guardian, was ignorant of the wrong done, and the technical breach of duty until the official audit was made after the resignation of the City Manager, April 13, 1939. The trial judge properly concluded that the Statute of Limitations constituted no bar to recovery of payments made from the City Manager's Emergency Fund because of lack of knowledge on the part of the city, and nonexistence of opportunity on the part of the city officials to discover with reasonable diligence the purposes for which such funds were paid. Recovery of payments made to Connor from the City Manager's Emergency Fund is not barred by the Statute of Limitations.

In its contention that the rights of the parties have heretofore been adjudicated and the auditor and his bondsman have been in effect discharged of liability, reference must be made to the fact that, in Coleman, Trustee, v. Kansas City, Missouri, supra, Connor did thus indirectly get a judgment for $1,333.33. In that case he claimed that his deductions at the direction of the City Manager exceeded by that amount the compensation he received. That case was undecided when the judgment herein was rendered. The trial court properly found that the issue in the Coleman case was not the issue here. In this case the salary fixed by ordinance is the base salary in determining whether, as between the third party, the surety company and the city, the city auditor has failed faithfully to discharge the duties of his office in accepting illegal compensation in the face of express ordinance provisions, and in failing to report to the council the illegal payments of money from the city's funds made to himself and to the assistant auditor. The issues and parties in the two cases are dissimilar; no ground for res adjudicata appears, nor did the answer in the present case plead res adjudicata. As the trial judge says in his conclusions: "We are not dealing now with a controversy between the employees and the city regarding the collection of their salary."

As hereinabove shown the trial court allowed the auditor credit for $3,916.51, the amount of salary which he was entitled to receive under ordinance, but did not get because of nonordinance reductions. Accordingly this point is ruled against appellant.

Counsel for appellant contend that by the execution by the city of release agreements in favor of the sureties on the bonds of the Director of Finance, the City Treasurer, and the First National Bank, appellant has been released in whole or in part of all items for which the district court held it responsible. This contention is based upon Section 3658, R.S.Mo.1939, Mo.R. S.A. § 3658, providing for contribution in a judgment founded on a redress for a private wrong. This statute is applicable only in the case of joint tort feasors. Grimm v. Globe Printing Company, Mo.Sup.; 232 S. W. 676; Abbott v. City of Senath, Mo. Sup., 243 S.W. 641. In these releases the city accepted $200,000 from said surety companies and bank in compromise and settlement of its claims against them growing out of alleged diversions, misapplications and misuse of the funds of the city, and against the bank growing out of the acceptance by said bank of the City Manager's Emergency Fund, and certain withdrawals therefrom. The right to proceed against other persons, firms or corporations was specifically reserved in each of the release agreements, and in the ordinance authorizing the same. The appellant herein is neither a joint tort feasor nor joint wrongdoer with any of the parties released. As the court found, there is no evidence that the amount paid in these settlements equals the total loss of the city on account of misapplication of city funds. Consequently, the statute invoked has no application.

Appellant complains that the court erred in entering judgment in excess of the face of the bond. Reference is made to Article 2, Chap. 16, R.S.Mo.1939, Mo. R.S.A. § 3263 et seq, which concerns Penal Bonds; and reference, among other cases, is made to Turner v. Lord, 92 Mo. 113, 4 S.W. 420, in which it was held that no interest is allowable where a penal bond is collaterally conditioned upon something other than the payment of money. A penal bond is thus defined as "a bond promising to pay a named sum of money (the penalty) with a condition underwritten that, if a stipulated collateral thing, other than the payment of money, be done or forborne, as the case may be, the obligation shall be void." Goffe v. National Surety Company, 321 Mo.

140, 9 S.W.2d 929, 939, citing Black's Law Dictionary, 2d Ed., p. 886. This is not a penal bond, but a fidelity bond; and in the later case of Gary Realty Company v. Swinney, 322 Mo. 450, 17 S.W.2d 505, the case of Turner v. Lord and other similar cases are distinguished and modified, and it is held that such a fidelity bond is a contract on which interest on the amount due is payable after demand for payment has been made. See also Goffe v. National Surety Company, supra, 9 S.W.2d page 939.

"Under bank treasurer's fidelity bond construed as insurance contract, surety wrongfully withholding payment became liable for interest on amount due bank, though amount due, plus interest, exceeded amount named in bond." Union Trust Company v. Wyatt, Mo.Sup., 58 S.W.2d 708, 709, 714. .

No error was committed in entering judgment in excess of the face of this bond. The city was undoubtedly damaged specifically in the payment of the compensation items in excess of the salary fixed by ordinance, and in defiance of the express ordinance provision that no appointee or employee in the city service should be entitled to any additional salary or compensation for any duty performed or service rendered, "and this regardless of the office or position held or work done, or service rendered". Such a practice, if countenanced, would defeat the well-known purpose of this charter enactment to raise the discharge of civic duties in local city government above the demands and opportunities for sordid personal gain.

We have carefully considered all the assignments of error on this appeal, and finding no reversible error the judgment is affirmed.