TRIANGLE ELECTRIC SUPPLY CO., Inc., Plaintiff,

v.

MOJAVE ELECTRIC CO. et al., Defendants.

KOPPERS COMPANY, Inc., Plaintiff,

v.

CONTINENTAL CASUALTY CO., Inc., et al., Defendants and Third-Party Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Third-Party Defendant.

Nos. 12904, 13232.

United States District Court
W. D. Missouri, W. D.

Feb. 26, 1965.

Lathrop, Righter, Gordon & Parker, Kansas City, Mo., for Triangle Electric Supply Co.

Watson, Ess, Marshall & Enggas, Kansas City, Mo., for National Fire Ins. Co.

Rafter, Biersmith, Miller & Walsh, Kansas City, Mo., for D & L Const. and Continental Cas. Co.

JOHN W. OLIVER, District Judge.

In our memorandum opinion of October 5, 1964, now reported as Triangle Electric Supply Company v. Mojave Electric Company, W.D.Mo., 1964, 234 F. Supp. 293, we noted that at the time of the original submission of this branch of the case National Union suggested that various questions relating to the amount of damages be reserved in order to " 'allow the parties to consult with each other as to the amount of judgment, if any, after the Court has made its decision on the various issues raised by the requested Findings of Fact and Conclusions of Law' " as initially presented by the parties, (page 296 of 234 F.Supp). In accordance with that suggestion we did not rule specifically on the items of damage concerning attorneys' fees, pre-judgment interest, and other particular items of damages (page 316 of 234 F.Supp.).

Our order of October 5, 1964, therefore directed counsel for D & L to prepare a final order and to submit the same to counsel for National Union for approval. The parties, however, were unable to agree. We then directed the submission of additional suggested findings and conclusions, together with supporting briefs. We have studied those briefs and shall make additional findings and state additional conclusions in order that final judgment may be entered.

The latest briefs of the parties reveal that particular questions formerly in contest are no longer contested. We therefore note at the outset that "National Union concurs with D & L in its statement (Br. p. 2) that the legal principle applicable to the issues now remaining for decision will be the same no matter whether Missouri, California, or federal law is held to be controlling" (page 1 of National Union's Supplemental Suggestions). National Union also agrees that, on the facts, the bond limitations of both the exterior and interior bonds are exceeded by items of damage as to which no

dispute remains (page 2 of National Union's Supplemental Suggestions).

The area of conflict between the parties' present positions relates to the questions of whether attorneys' fees and pre-judgment interest may be included in the judgment in excess of the amount of the bonds involved. National Union contends generally that neither item of damage may be allowed because to do so would exceed the $200,000 provided in the exterior bond, and the $330,000 provided in the interior bond. National Union also argues that pre-judgment interest may not be recovered in any event because the damages were not "liquidated;" because no demand was made on the surety; and because, as already stated, the sums provided in the bonds have already been exhausted by the allowance of other items of damage.

National Union's factual assertion that no demand was ever made by D & L can not be sustained in light of paragraph 29(1) of the amended pre-trial order which stipulated that "due notice of said defaults by Mojave was given National by D & L and due demand was made that National assume the duties of Mojave under said subcontracts." That paragraph of the amended pre-trial order adds that "National refused to comply with said demand, however, claiming that it had been released from its obligations under said performance and payment bonds by virtue of the actions of D & L and Mojave above described."

There is no question but that the demand referred to in that agreed statement was made on April 4, 1960. Hence the basic question for decision reduces itself to the question of whether attorneys' fees and pre-judgment interest may be allowed as elements of damage over and above the amounts specified in the bonds.

We deal first with the question of attorneys' fees. In our memorandum of October 4, 1964, we noted that the situation presented by this branch of the case in regard to attorneys' fees and pre-judgment interest was a bit different than the narrow question we ruled on summary judgment on the first branch of this case on June 30, 1963, now reported as Triangle Electric Supply Co. v. Mojave Electric Co., W.D.Mo.1963, 217 F.Supp. 913.

Our memorandum opinion of June 20, 1963 did not reach or rule the question of whether attorneys' fees and pre-judgment interest might be recovered in a case where no agreement existed between the parties in regard to those particular items (page 914 of 217 F.Supp.). We did, however, hold that Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1917), was a case that we would follow, in addition to United States for the Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957).

The Court of Appeals, in affirming our order of June 20, 1963, agreed that Carter controlled the factual situation where the contract made express provision for the allowance of attorneys' fees and interest. While the Court of Appeals limited its holding to that particular factual situation, as we had, it nevertheless helpfully stated that "where there is no express contract for interest or attorneys' fees, it is necessary to look to state law to measure the extent of the subcontractor's obligation" (page 1013 of 332 F.2d). The Court of Appeals relied upon John Davis Co. and by footnote directed attention to cases from the 4th, 9th and 10th Circuits that had allowed interest or attorneys' fees on the basis of state law "in situations where no express contract relating thereto existed" (see cases cited in footnote 4 on page 1013 of 332 F.2d).

The factual situation in regard to attorneys' fees and the factual situation in regard to pre-judgment interest on this branch of the case are different. In regard to attorneys' fees, Paragraph 36 of Exhibit D expressly provided that "in the event Contractor [D & L] engages the services of any attorneys for any action brought by either party on or under this contract, or by either party for its enforcement or in defending any action brought against the Contractor due to the fault of this Subcontractor, the Subcontractor agrees to pay reasonable at-

torneys' fees to the Contractor." That paragraph also provided that the "Subcontractor agrees to hold the Contractor harmless by reason of any damages incurred by Subcontractor through the fault of the Subcontractor to fully and efficiently perform his contract and pay such costs, expenses, damages and/or attorneys' fees which Contractor may incur by reason of failure of Subcontractor to fully and completely perform hereunder." No such agreement existed in regard to the payment of pre-judgment interest.

The basic rationale of our memorandum opinion of October 5, 1964, and our application of the rule of decision of our controlling court in American Casualty Co. of Reading, Pa. v. Brezina Const. Co., 8th Cir. 1961, 295 F.2d 603, requires that we now hold that the express contractual agreement covering attorneys' fees places that item of damage in the same category as the attorneys' fees involved in our memorandum opinion of June 20, 1963, and that inquiry into state law is unnecessary.

The parties are in agreement as to the amount of fees. Paragraph 18 of the amended pre-trial order states that "in the event the Court finds that attorneys' fees are recoverable by D & L on account of the prosecutions of the causes asserted by D & L against National, at the trial level, the parties have agreed that a reasonable attorney fee therefor would be $25,000 * * *." In addition the parties agreed that attorneys' expenses incurred total $435.00. Accordingly, the judgment shall include a provision allowing attorneys' fees in the amount of $25,000 and expenses in the amount of $435.00.

We turn now to the question of pre-judgment interest. As an introduction to that subject, it should be stated that the allowance of pre-judgment interest is actually an assessment of damage for delay in the payment of a contractual obligation and does not represent, in the true sense of the word, interest as understood in banking circles. Mr. Justice Stone makes this clear in Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941). He there stated that "a suit upon a contractual obligation to pay money at a fixed or ascertainable time is a suit to recover damage for its breach, including both the principal amount and interest *by way of damage for delay in payment* of the principal after the due date" (pages 295–296, 61 S.Ct. page 997). Suits on bonds such as the bonds here involved seek to recover amounts that are due and owing by the particular bonding company that has contracted to pay on default of its principal.

The fundamental theory of the assessment of what is known as "pre-judgment" interest represents the imposition of legal compensation for the use of money wrongfully withheld from payment. As Mr. Justice Stone noted in Royal Indemnity Co., "the debtor has had the use of the money, of which its default has deprived the creditor," and "interest upon the principal sum from the date of default, at a fair rate, is therefore an approximate measure of damage for the delay in payment" (pages 296–297 of 313 U.S., page 998 of 61 S.Ct.).

United States v. Seaboard Surety Co., 2d Cir. 1964, 339 F.2d 1, is the most recent case applying the rationale of Royal Indemnity Co. That case specifically notes that "interest in excess of the penal sum of the bond may be owing by the surety where the interest results from the surety's default and not the principal's." (pages 3–4 of 339 F.2d). That case directed the district court to increase the amount of interest owed by the surety to date back to the date "that demand was made on Surety for payment" (page 3 of 339 F.2d).

The recent Missouri case of Cannon v. Bingman, Springfield Ct.App. 1964, 383 S.W.2d 169, is consistent with the principles applied in the federal cases just cited. That case quotes with approval the modern rule concerning allowance of interest as stated by a New Jersey court: " 'It should be borne in mind that the whole tendency of courts of law and courts of equity for a considerable period of time has been to break away from hard

and fast rules and to charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case' " (page 174 of 383 S.W.2d). That case expressly stated that "we do not wish to rest our decision upon any technical rules which have grown up involving interest" (page 174 of 383 S.W.2d).

In our memorandum opinion of October 5, 1964, we noted that the action taken by National Union "[left] D & L without any benefit of the protection of the bonds whatever" (page 316 of 234 F.Supp.). We also noted that National Union disregarded the usual action and practice taken by surety companies in the event of default of their principal on a construction job. The ultimate result of National Union's refusal to act meant that it had the use of the money involved in this litigation since the time it refused to comply with the demand it concedes D & L made upon it. It would therefore seem apparent that unless there is some compelling legal reason why pre-judgment interest should not be included in the judgment, it is obvious that justice requires that it be included.

█ The mere fact that the allowance of pre-judgment interest would exceed the amount of the bond is not a valid legal reason for its disallowance. The allowance of pre-judgment interest in Illinois Surety Co. v. John Davis Co., supra, did in fact exceed the amount of the bond but that fact did not deter Mr. Justice Brandeis in affirming the assessment of that item of damage. Judge Mack, in the Court of Appeals opinion in the John Davis Co. case, reported in 7 Cir., 226 F. 653, 662, held that the "failure of the surety to discharge its obligation * * after proper demand or commencement of suit subjects it to the payment of interest." Mr. Justice Brandeis, in the opinion of the Supreme Court, held that even though "the aggregate liability on the claims exceeded the penalty, it [the surety] was properly held for an additional amount equal to interest from the commencement of the suit" (page 382 of 244 U.S., 37 S.Ct. page 617).

█ The law of Missouri is consistent with the principles just stated. Gary Realty Co. v. Sweeney, (1929), 322 Mo. 450, 17 S.W.2d 505, and Maryland Casualty Co. v. Kansas City, Mo., 8th Cir. 1942, 128 F.2d 998, make clear that Missouri statutes applicable to what must be called, strictly speaking, "penal bonds," do not prohibit recovery of pre-judgment interest where the breach of a bond condition involves an obligation to pay money.

The Supreme Court of Missouri in the Gary Realty Co. case held that "our statute does not deny a recovery of interest in addition to the penalty of the bond, in cases where the action is brought for the breach of a condition *for the payment of money*, although such condition may be a collateral one" (page 510 of 17 S.W.2d, italics the court's).

That case also held that "defendant's refusal to pay after demand entitled plaintiff to interest from the date of such demand" on the theory that "a bond is a contract * * * and, being such, the statute allows interest on the amount due thereon after demand of payment" (page 510 of 17 S.W.2d). The Supreme Court of Missouri therefore affirmed the trial court which had allowed a recovery of pre-judgment interest "in addition to the penalty named in the bond" (page 509 of 17 S.W.2d).

In the Maryland Casualty Company case, the Court of Appeals for the Eighth Circuit followed Gary Realty Co. That case affirmed the action of then District Judge Collet who entered judgment "in excess of the face of [the] bond" (page 1005 of 128 F.2d 998).

The Court of Appeals in Maryland Casualty Co. expressly held that the fidelity bond there involved was not a "penal bond" subject to the Missouri statutes relating to such bonds. It is clear from what we said in our memorandum opinion of October 5, 1964, that we, in the same manner, do not view the bonds here involved as "penal bonds." We hold the bonds here involved must be considered as contracts which at least call for collateral conditions and undertakings not

dissimilar to those involved in Gary Realty Co.

■ Finding nothing in either the federal or state law that would prohibit the allowance of pre-judgment interest, we find and determine that such interest should be allowed as an item of damage for the delay in payment that National Union elected to cause and that pre-judgment interest should be allowed from the date of the demand admittedly made on April 4, 1960.

We therefore make further the following supplemental findings and state supplemental conclusions of law.

### Supplemental Findings of Fact

10. Although not separately recoverable, by reason of the failure of National Union's principal, Mojave, to promptly pay all who furnished labor and material in the prosecution of the work of the exterior electrical subcontractor, D & L reasonably incurred expenses in the amount of $83,301.74 in resolving and satisfying claims of persons so furnishing.

11. The costs reasonably incurred by D & L in completing the work of the exterior electrical subcontract after National Union on April 4, 1960 refused to undertake its completion did exceed the face amount of that subcontract, $200,-000.00, as the parties could upon that date reasonably have determined that they would.

12. Although not separately recoverable, by reason of the failure of National Union's principal, Mojave, to promptly pay all who furnished labor and material in the prosecution of the work of the interior electrical subcontract, D & L reasonably incurred expenses in the amount of $28,479.41 in resolving and satisfying claims of persons so furnishing.

13. The costs reasonably incurred by D & L in completing the work of the interior electrical subcontract after April 4, 1960, did exceed the face amount of this subcontract, $330,000.00, as the parties could upon that date have reasonably determined that they would.

14. Interest on $200,000.00 computed from the date of default and demand, April 4, 1960, at six per cent per annum to November 16, 1964, would amount to $55,487.80, and accumulates thereafter at a daily rate of $32.90. Interest on $330,000.00, computed for the same period and at the same rate, would amount to $91,455.00, and accumulate at $54.24 per day, a total interest to November 16, 1964, of $146,942.80 and $87.15 per day thereafter.

15. A reasonable attorneys' fee for the prosecution of the instant cross-claim through trial would be $25,000.00.

### Supplemental Conclusions of Law

1. This Court is possessed of jurisdiction over the subject matter hereof and the parties hereto.

2. As a direct result of the breach of the conditions of the instant bonds, cross-claimants were damaged in the sum exceeding the face amounts of said bonds, $530,000.00, so that the obligees, herein identified as D & L Construction Company & Associates, are entitled to judgment against the obligor, National Union Fire Insurance Company of Pittsburgh, Pa., in said sum of $530,000.00.

3. In addition thereto such cross-claimants are entitled to recover as a part of such judgment interest upon such sum of $530,000.00 at the rate of six per cent per annum from the date not later than their demand upon cross-defendants, April 4, 1960.

4. In addition thereto, and not limited thereby, such cross-claimants are entitled to recover of such cross-defendant a reasonable attorneys' fee for the prosecution through trial of such cross-claim in the amount of $25,000.00, and expenses in the amount of $435.00.

5. Cross-claimants are entitled to judgment against cross-defendant National Union Fire Insurance Company of Pittsburgh, Pa., computed to November 16, 1964, in the sum of Seven Hundred Two Thousand Three Hundred Seventy-seven and 80/100 Dollars ($702,377.80), with interest thereon at the rate of six per cent per annum from the date hereof

until fully satisfied and for their costs herein expended.

For purposes of the record, we expressly refuse to make the supplemental findings and conclusions most recently suggested by National Union.

Counsel for D & L will submit an appropriate final judgment within five (5) days.

It is so ordered.