STATE OF WEST VIRGINIA *ex rel.*

DAVID C. HARDESTY, JR., *State Tax Commissioner*
*And Ex Officio Chief Inspector And Supervisor*
*Of Public Offices*

*v.*

SHERMAN D. STALNAKER AND THE FIDELITY AND CASUALTY
COMPANY OF NEW YORK

(No. 15093)

STATE OF WEST VIRGINIA *ex rel.*

DAVID C. HARDESTY, JR., *State Tax Commissioner*
*And Ex Officio Chief Inspector And Supervisor*
*Of Public Offices*

*v.*

VIRGIL HAMRICK AND THE FIDELITY AND CASUALTY
COMPANY OF NEW YORK

(No. 15094)

STATE OF WEST VIRGINIA *ex rel.*

DAVID C. HARDESTY, JR., *State Tax Commissioner*
*And Ex Officio Chief Inspector And Supervisor*
*Of Public Offices*

*v.*

NEWTON F. RIGGLEMAN AND
TRAVELERS INDEMNITY COMPANY

(No. 15095)

Decided July 29, 1981.

*Chauncey H. Browning*, Attorney General, *Michael G. Clagett*, Assistant Attorney General, for appellant.

*Harry A. Smith, III*, for appellees.

MCHUGH, JUSTICE:

This action is before this Court upon the petition filed December 8, 1980, of the State of West Virginia at the relation of the State Tax Commissioner as ex officio Chief Inspector and Supervisor of Public Offices for an appeal from the final orders of the Circuit Court of Randolph County, West Virginia, entered April 25, 1980, dismissing the Tax Commissioner's complaints filed against the appellees; upon all pleadings, exhibits and other matters of record; and upon the briefs and argument of counsel.

Upon a motion filed by the Tax Commissioner (hereinafter appellant), this Court by order entered March 12, 1981, consolidated the above-styled actions for purposes of briefing and argument. In the actions filed in the Randolph County Circuit Court, the appellant sought judgments against the appellees for excess salary payments paid to the individual appellees by the County Court of Randolph County for a period from July 1, 1971, to February 29, 1972.

The individual appellees were elected officers of Randolph County. Sherman D. Stalnaker was Assessor of Randolph County for a term beginning January 1, 1969, and ending January 1, 1973. Virgil Hamrick was Clerk of the County Court of Randolph County for a term beginning January 1, 1969, and ending December 31, 1974.[1] Newton F. Riggleman was Clerk of the Circuit Court of Randolph County for a term beginning January 1, 1969, and ending January 1, 1975. Upon taking their respective offices, Stalnaker, Hamrick and Riggleman entered into written agreements with surety companies for their official bonds. The appellee, The Fidelity and Casualty Company of New York, executed the official bonds of Stalnaker and Hamrick and the appellee, Travelers Indemnity Company, executed the official bond of Riggleman. These surety companies were qualified to do business in West Virginia.

---

[1] The office of clerk of the county court was redesignated "clerk of the county commission" pursuant to the "Judicial Reorganization Amendment," ratified November 5, 1974, to the Constitution of West Virginia. *See W. Va. Const.*, art. 9, § 12.

In 1971, the West Virginia Legislature authorized county courts to increase the salaries of county officials during the terms of office to which such officials were elected.[2] Accordingly, the County Court of Randolph County raised the salary of Stalnaker from $7,300.00 per year to $9,900.00 per year and the salaries of Hamrick and Riggleman from $7,500.00 per year to $9,900.00 per year. The increase in salaries was paid to Stalnaker, Hamrick and Riggleman from July 1, 1971, to February 29, 1972.

However, the 1971 legislative amendments authorizing the increase of salaries of county officials were held by this Court to be unconstitutional in *Delardas v. County Court of Monongalia County*, 155 W. Va. 776, 186 S.E.2d 847 (1972). In *Delardas*, we held that the 1971 legislative amendments violated *W. Va. Const.*, Art. VI, § 38, which states: "Nor shall the salary of any public officer be increased or diminished during his term of office. . . ."[3]

---

[2] The office of county court or tribunal was redesignated "county commission" pursuant to the "Judicial Reorganization Amendment," ratified November 5, 1974, to the Constitution of West Virginia. *See W. Va. Const.*, art. 9, § 9.

[3] In *Delardas v. County Court of Monongalia County*, 155 W. Va. 776, 186 S.E.2d 847 (1972), the petitioner, as citizen, voter and taxpayer of Monongalia County, West Virginia, instituted a mandamus proceeding against the Monongalia County Court and its county commissioners. The petitioner challenged the action of the county commissioners of increasing their respective salaries in 1971. The petitioner contended, specifically, that the county commissioners violated *W. Va. Const.*, art. VI, § 38, which states: "Nor shall the salary of any public officer be increased or diminished during his term of office. . . ." The respondents, however, attempted to justify their salary increase upon the basis of certain 1971 legislative amendments to the West Virginia Code, which amendments authorized county courts to increase the salaries of county officials during the terms of office to which they were elected. 186 S.E.2d at 855.

This Court, in *Delardas*, held in favor of the petitioner and concluded that the salary increase of the county commissioners of Monongalia County and the 1971 legislative amendments were essentially unconstitutional. Specifically, it was held that the county commissioners had a mandatory, nondiscretionary duty to comply with *W. Va. Const.*, art. VI. § 38. This Court further stated as follows:

. . . [T]he [1971] Act is unconstitutional in part for the reason that it manifestly undertakes to confer upon the county courts of the state authority to increase salaries of elected county officials

Accordingly, the appellant upon the basis of *Delardas* advised all county officials that they were to repay their salary increases prior to June 30, 1972. Subsequently, the appellant conducted an audit and determined that Stalnaker, Hamrick and Riggleman failed to return their salary increases to the Randolph County treasury. Specifically, the appellant determined that Stalnaker was indebted to Randolph County in the amount of $1,733.32, and that Hamrick and Riggleman were each indebted to Randolph County in the amount of $1,600.00.

Upon the failure of repayment of the improper salary increases, the appellant on December 27, 1979, filed actions in the Circuit Court of Randolph County against Stalnaker, Hamrick and Riggleman and their sureties, The Fidelity and Casualty Company of New York and Travelers Indemnity Company. In that action, the appellees filed motions to dismiss, and a hearing upon the motions was held on March 24, 1980.

By orders entered April 25, 1980, the trial judge granted the motions of the appellees to dismiss. In so doing, the court made the following conclusions of law:

> 1. That, as to [Stalnaker, Hamrick and Riggleman] the right of action set forth in the Complaint did not accrue within five years next before the commencement of this action and the action is thus barred by the statute of limitations, § 55-2-6, *West Virginia Code.*

> 2. That, as to [The Fidelity and Casualty Company of New York and the Travelers Indemnity Company] the monies which are the subject matter of this action did not come into the hands of [Stalnaker, Hamrick and Riggleman in their official capacities] ... and are thus beyond the purview of the official bond executed by [Stalnaker, Hamrick and Riggleman] as Assessor [County Clerk and Circuit Clerk].

---

during the terms of office for which they were elected. The legislature has no unrestricted power to do so and obviously the legislature cannot confer such power or authority upon the county courts of the state.

186 S.E.2d at 855.

In this action, the appellant does not question the conclusion of the Randolph County trial judge that the appellant's actions against appellees, Stalnaker, Hamrick and Riggleman, are barred by the statute of limitations.[4] However, it is from the conclusion of the trial judge that the appellant may not recover from The Fidelity and Casualty Company of New York and Travelers Indemnity Company that the appellant appeals to this Court.

*W. Va. Code*, 6-2-10 [1977], and *W. Va. Code*, 6-2-10a [1941], provide for the giving of bond with good security by county officers. Among such county officers required to give bond are clerks of county and circuit courts and assessors, which positions were held by the appellees.[5]
*W. Va. Code* 6-2-3 [1923] provides as follows:

---

[4] *W. Va. Code*, 55-2-6 [1923] provides as follows:

Every action to recover money, which is founded upon an award, or on any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: If the case be upon an indemnifying bond taken under any statute, or upon a bond of an executor, administrator or guardian, curator, committee, sheriff or deputy sheriff, clerk or deputy clerk, or any other fiduciary or public officer, within ten years; if it be upon any other contract in writing under seal, within ten years; if it be upon an award, or upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years; and if it be upon any other contract, express or implied, within five years, unless it be an action by one party against his copartner for a settlement of the partnership accounts, or upon accounts concerning the trade or merchandise between merchant and merchant, their factors or servants, where the action of account would lie, in either of which cases the action may be brought until the expiration of five years from a cessation of the dealings in which they are interested together, but not after.

[5] *W. Va. Code*, 6-2-10 [1977], provides in part as follows:

Every commissioner of a county commission and every clerk of a circuit court shall give bond with good security, to be approved by the circuit court, or the judge thereof in vacation; and every sheriff, deputy sheriff, surveyor of lands, clerk of a county commission, assessor, county superintendent of schools, notary public and magistrate shall give bond with good security, to be approved, unless otherwise provided by law, by the county commission of the county in which such officer is to act.

> Unless otherwise specially provided, every bond required by any statute of this State of any person undertaking an office or employment shall be conditioned upon the faithful discharge by the principal of the duties of his office or employment, and upon accounting for and paying over, as required by law, all moneys which may come into his possession by virtue of the office or employment. The liability of the principal and his sureties upon such bond shall extend to all moneys received by the principal by virtue of his office or employment under the laws in effect at the time of the execution of the bond, and to all money which shall come into his possession by virtue of his office or employment under the provisions of any law enacted during his continuance in such office or employment.[6]

The language of the three surety agreements in this action follows the language of *W. Va. Code*, 6-2-3 [1923]. Specifically, each surety agreement is based upon the faithful discharge or performance by Stalnaker, Hamrick and Riggleman of their duties of office, or those duties imposed by law, and upon an accounting for all money coming into their hands as public officers.

The question before this Court is whether the salary overpayments to Stalnaker, Hamrick and Riggleman fall within the provisions of their surety agreements and whether such salary overpayments were monies received

---

[6] *W. Va. Const.*, art. II, § 8 requires official bonds to be payable to the State of West Virginia. Moreover, *W. Va. Const.*, art. IX, § 5, concerning county organization, provides that the West Virginia Legislature may require county officers to give bond ". . . for the faithful discharge of the duties of their respective offices." It should be noted that language similar to *W. Va. Code*, 6-2-3 [1923] appeared as early as in the 1863 West Virginia Constitution. The 1863 version of our State Constitution provided in art. VII, § 7, concerning "Counties and Townships," in part as follows:

> [The Legislature] shall also provide for commissioning such of the officers therein mentioned as they may deem proper, and may require any class of them to give bond with security for the faithful discharge of the duties of their respective offices, and for accounting for any paying over, as required by law, all money which may come to their hands by virtue thereof.

by virtue of their office within the meaning of *W. Va. Code,* 6-2-3 [1923].

Very few case decisions can be found upon the issue of the liability of sureties for overpayments in the salaries of public officers. In *United States v. Boyd,* 118 F. 89 (W.D. Mo. 1902), the United States government brought an action against the heirs of a deceased public officer and his sureties to recover salary overpayments. The deceased public officer had been consul general of the United States in what was then Bangkok, Siam, and the salary overpayments allegedly occurred during the years 1892 and 1893. The bond executed by the sureties on behalf of the deceased officer, Sempronius H. Boyd, provided, in part, that he was to ". . . truly and faithfully discharge the duties of his said office according to law, and shall truly and faithfully account for, pay over, and deliver up all fees, moneys, goods, effects, books, records, papers, and other property. . . ."

In *Boyd,* the Missouri district court held that the sureties were not responsible for the alleged salary overpayments.

The decision in *Boyd* was based, in part, upon the following analysis:

> The matter of his salary, which was his individual perquisite, in its very nature could not have been the subject-matter within the object and purview of the bond. It was not necessary that the government should exact of its consul a bond for money the government should pay him for his salary. Such money when paid by the government was not to be taken into an accounting between him and the government. It could not have been anticipated by, or within the contemplation of, the sureties that the treasury department in remitting salary to the consul general would make a mistake and send him too much. The bond was not to cover the blunders of the disbursing officers of the government, but only the defalcations of the consul general as such in accounting, to the government for moneys coming to his office in the course of his official duties.

118 F. at 91.

It should be noted, however, that the Court in *Boyd* recognized that the deceased officer was a trustee by implication on behalf of the United States for the amount of the alleged salary overpayments and that the government could institute an action against the officer's heirs for restitution. 118 F. at 91 and 92.

A subsequent federal decision also arising from the State of Missouri is *Maryland Casualty Co. v. Kansas City*, 128 F.2d 998 (C.A. 8th Cir. 1942). In *Maryland Casualty Co.*, the plaintiff, Kansas City, Missouri, brought an action against the surety of the city auditor to recover salary overpayments. The bond agreement executed in 1932 between the surety and the city auditor stated that if the auditor ". . . shall during the time he shall fill said office or position after this date faithfully discharge and perform all of his duties as Auditor of Kansas City, then this obligation shall be void; otherwise to remain in full force and effect." 128 F.2d at 999.

The court in *Maryland Casualty Co.* held that the surety was responsible to the plaintiff for the salary overpayments. The court stated in part as follows:

Connor [the city auditor], as found by the district judge, at all times knew what salary was fixed by ordinance for his own services and the services of the employees in his office. He knew the provisions of the city charter respecting salaries; and the engagement of a surety on such an official bond is entered into with reference to the law which defines the duty of the officer. As held by the Missouri Supreme Court in Smith v. Pettis County, 345 Mo. 839, 136 S.W.2d 282, the right of a public official to compensation must be founded on a statute; and a statute granting a public official compensation should be strictly construed against the officer.

. . . .

Public officers claiming compensation for official duties performed must point out the statute authorizing such payment. Compensation paid to a public officer, when not authorized by law, or in

excess of compensation authorized by law, may be recovered from the principal and his surety.

128 F.2d at 1001.

In *State ex rel. Alderson v. Holbert*, 133 W. Va. 807, 58 S.E.2d 796 (1950), the State of West Virginia at the relation of its Tax Commissioner brought an action against a commissioner of the County Court of Barbour County, West Virginia, and the county commissioner's surety for recovery of excessive salary payments. Our holding in *Alderson* was limited to the principle that inasmuch as the action of the State was upon the county commissioner's bond, such action was governed by the ten year statute of limitations provided by *W. Va. Code*, 55-2-6 [1923]. *See* n. 4, *supra*. As this Court stated:

> It seems clear that the present action is upon the bond. To hold otherwise would effectively nullify the applicable provisions of Code, 55-2-6. Such provisions should be liberally construed to the end that public officers and sureties on their bonds should be held strictly liable in accounting for public funds. Therefore the answer to the second question certified is that this action being one upon the bond described in the declaration, the applicable statute of limitations to this cause of action is ten years from the time it accrued.

133 W. Va. at 814.

We note that *W. Va. Code*, 55-2-6 [1923], expressly provides that an action to recover ". . . upon an indemnifying bond taken under any statute, or upon a bond of an executor, administrator or guardian, curator, committee, sheriff or deputy sheriff, clerk or deputy clerk, or any other fiduciary or public officer . . ." shall be brought within ten years next after the right to bring the same shall have accrued. *W. Va. Code*, 55-2-6 [1923]. Furthermore, we recognize that "[a]n action in debt, instituted against a public officer and the surety on his official bond, alleging the execution of the bond, the conditions thereof, breach of the conditions, and resulting injury, is an action upon the bond of a public officer within the meaning of Code, 55-2-6, and such action may be maintained if brought within ten years from the

864

time the cause of action accrued," Syl. pt. 1, *Alderson, supra,* and such an action upon the bond may be maintained if brought within the ten year period even though the provisions of *W. Va. Code,* 55-2-6 [1923], may have barred an action against a county officer. *Cf., State ex rel. Alderson v. Holbert,* 133 W. Va. 337, 340, 56 S.E.2d 114, 116 (1949).

In *State ex rel. City of Beckley v. Roberts,* 129 W. Va. 539, 40 S.E.2d 841 (1946), an action to recover money was instituted by the City of Beckley against a police officer and his surety, The Fidelity & Casualty Company of New York. Specifically, the evidence indicated that the officer improperly received deposits made by persons charged with violations of municipal ordinances, and judgment for the plaintiff entered by the Circuit Court of Raleigh County, West Virginia, was affirmed by this Court.

In *City of Beckley,* the surety was held responsible for the conduct of the officer in improperly receiving the funds in question. Indicating that the surety was a corporation organized for profit, this Court in Syl. pt. 3 held as follows:

The rule of strict construction applies to a voluntary surety on a bond, but such rule does not apply where a corporation organized to enter into bonds for profit is surety thereon. Such corporations are essentially insurers and their contracts, being generally expressed in terms which they prescribe, must be construed most strongly in favor of the obligee therein.

Upon all of the above, this Court is of the opinion that the Circuit Court was incorrect in its conclusion that the salary overpayments to Stalnaker, Hamrick and Riggleman were beyond the purview of their official bonds and, thus, not received by virtue of their office within the meaning of *W. Va. Code,* 6-2-3 [1923]. Specifically, we hold that a bond given by a public officer providing that such officer shall faithfully discharge or perform the duties of his office and shall account for and pay over all monies which may come into his hands as such public officer is breached within the meaning of *W. Va. Code,* 6-2-3 [1923], upon the failure of such officer to return to the appropriate governmental

entity overpayments in salary, such statute in part conditioning bonds upon an accounting for and paying over of all monies received by virtue of such public officer's office or employment.

The salaries of assessor, county clerk and circuit clerk received by Stalnaker, Hamrick and Riggleman, respectively during the period in question were paid pursuant to statutory and county authority. *W. Va. Code*, 7-7-4, *et seq.* It is without question that such monies were paid from public funds. When the salaries were paid to Stalnaker, Hamrick and Riggleman part of such monies constituted compensation to which those county officers were entitled, and the remainder of such monies was determined to be salary overpayments. The salary overpayments could be none other than public funds. The overpayments continued to belong to the public as they did at the time they were improperly paid to Stalnaker, Harmick and Riggleman as salary.

Accordingly, the language of *Alderson, supra,* that public officers and sureties should be held strictly liable in accounting for public funds, is relevant to this action. As indicated in *Maryland Casualty Co., supra,* a public officer claiming compensation for official duties performed must assert the statute authorizing such payment, and as indicated in *Boyd, supra,* the officer is a trustee on behalf of the government for the amount of salary overpayments. Certainly, the return to the public of salary overpayments by a public officer would be "the faithful discharge by the principal of the duties of his office or employment" within the meaning of *W. Va. Code,* 6-2-3 [1923], and the bond of a public officer should be conditioned upon such repayment. Moreover, it is "by virtue of the office or employment" that the public officer receives his compensation regardless of whether part or all of such compensation is subsequently determined to be an overpayment. The public is entitled to have, as a condition of the public officer's bond, an "accounting for and paying over" of such salary overpay-

ments by such public officer.[7]

The final orders of the Circuit Court of Randolph County are hereby reversed to the extent that the trial judge concluded that the appellee surety companies are not responsible for the salary overpayments, and judgment is entered for the appellant in this Court against the appellee surety companies for the amount of the salary overpayments.

*Reversed; judgment entered here.*

---

[7] As stated in Rhyne, *The Law of Local Government Operations* § 13.43 (1980): "The bond of a public officer, furnished as required by statute or charter, is construed so as to preserve public funds. In addition, all statutory requirements are deemed to be part of the suretyship contract, and non-statutory provisions are sometimes disregarded."