Z. W. SPRINGER *v.* BOARD OF EDUCATION OF OHIO COUNTY *et al.*

(No. 8322)

Submitted April 22, 1936. Decided May 5, 1936.

*Donald McKee, Homer A. Holt,* Attorney General, and *Ira J. Partlow,* Assistant Attorney General, for plaintiffs in error.

*McKee & McKee,* for defendant in error.

MAXWELL, JUDGE:

This is a writ of error to an order of the circuit court of Ohio County awarding a peremptory writ of mandamus requiring the respondents, Board of Education of Ohio County and Thomas B. Foulk, its president, to pay to the relator, Z. W. Springer, the sum of $1750.00, alleged balance of salary of the relator as County Superintendent of Schools for said county for the last ten months of his term of office, which expired June 30, 1935.

Relator was elected to said office at the general election of 1930, and entered upon the discharge of his duties July 1, 1931. He was thus engaged when the County Unit School Law was passed, effective from passage, May 22, 1933. Acts of the Legislature, First Extraordinary Session 1933, Chapter 8. Prior to the last mentioned date, he received an annual salary of $2100.00, payable out of the general school fund. Code 1931, 18-4-3. Also, as ex officio county financial secretary of school affairs, he received annual compensation of $357.50, based on the number of teachers employed in said county for at least six months of each year. Code 1931, 18-4-5.

For many months following the enactment of the County Unit School Law, relator was paid on the basis of the annual salary of $2100.00 as provided by section 4 of article 4 of the stated act of 1933, the said salary being payable "from the elementary teachers' fund or the high school teachers' fund, or from both." Also, he received monthly compensation on the basis of $2,000.00 annual

salary to be paid out of the general school fund of the state, as provided, in section 6, article 9, chapter 9 of the Acts of the First Extraordinary Session of the Legislature of 1933. His compensation was thus at the annual rate of $4100.00. The aforementioned special compensation as financial secretary of school affairs was eliminated by statute.

In the fall of 1934, in pursuance of a general ruling which had been made some months previously by the attorney general of the state, the board refused to make further payments of the amount, to-wit, $175.00 per month, theretofore regularly paid by it.

Respondents base their refusal to pay said portion of relator's salary for the ten months' period aforesaid on a provision of section 38 of article 6 of the Constitution of West Virginia, providing: "Nor shall the salary of any public officer be increased or diminished during his term of office * * *." The attorney general's opinion was likewise grounded. See Report and Opinions, Attorney General, 1933-34, page 301.

Sections 1 and 4 of article 4 of the County Unit School Law are as follows:

(1) "The county superintendent shall be elected by the county board of education. The president of the board, immediately upon the election of the superintendent, shall certify the election to the state superintendent. The superintendent in office at the time of the passage of this act shall continue in office until the expiration of his present term: Provided, however, That the county superintendent in office at the time of the passage of this act shall exercise only such of the duties of the county superintendent designated in this article as the board may prescribe. The board may designate a teacher or teachers to perform the remaining duties, if any, required of the superintendent by this article: Provided further, That the foregoing provision shall apply only during the present term of the superintendent in office at the time of the passage of this act, or that part of the term as such superintendent may serve, and not thereafter."

(4) "The board shall fix the annual salary of the superintendent, but in no case shall the salary be less than eight hundred dollars per year nor more than three thousand dollars per year, exclusive of state aid. The board shall pay the salary from the elementary teachers' fund or the high school teachers' fund, or from both."

The circuit court held that the above mentioned constitutional provision is not applicable in the instant case because the effect of the enactment of the County Unit School Law was to abolish the old office of county superintendent of free schools and to create a new office under the same name. This conclusion was reached because of the enlargement and change of duties of the county superintendent under the new act, and because it requires of him personal qualifications not theretofore exacted. We have difficulty in accepting this position in the light of the wording of the first section of article 4 of the new act, quoted *supra*. Note the language: "The superintendent in office at the time of the passage of this act shall continue in office until the expiration of his present term."

But we fully concur in the view of the learned circuit court that, regardless of the proposition just discussed, the great increase and change of character in duties of the county superintendent of Ohio County justifies substantial increase of his salary. The court aptly refers to the situation in that county as involving a change from a more or less perfunctory supervision of the schools of a small portion of the county to that of a general manager in fact, with county-wide authority.

The geographical and otherwise general situation in Ohio County in respect of the matters here under discussion is not typical of that which is to be found in other counties of the state. Ohio County is a small county, yet there is located therein the City of Wheeling —the second largest of the state. The independent school district of Wheeling embraced five magisterial districts in their entirety and two others in part. With the management of the affairs of said Wheeling Independent School District, prior to the enactment of the County Unit Law,

the relator had only slight connection of merely routine nature. The independent school district of Triadelphia embraced the entire magisterial district of that name. There were four other independent school districts within the county. Each had its own board of education and own superintendent. So that it was only within a fringe of the county that the public school affairs were under the supervision of the county superintendent of schools. Under the new act, however, the nominality of his duties in respect of the former independent districts of the county has been terminated. The county superintendent is now the director or manager of all the school affairs of the county.

Where, by legislative action, there are imposed on an officer new duties which are incident and germane to his office as theretofore constituted, such increase of incidental duties will not justify an increase of salary in the face of a constitutional inhibition against increasing the salaries of public officials within their terms. *Donahey* v. *State,* 101 Ohio St. 473, 129 N. E. 591; *Moore* v. *Nation,* 80 Kan. 672, 103 P. 107, 23 L. R. A (N. S.) 1115, 18 Ann. Cases, 397; *State ex rel. Younger* v. *Clausen,* 111 Wash. 241, 190 P. 324; *Vogel* v. *White,* 134 Cal. App. 252, 25 P. (2d) 233; *People ex rel. Johnson* v. *Coffey,* 237 Mich. 591, 213 N. W. 460, 52 A. L. R. 1.

But where the duties newly imposed by the legislature are not mere incidents of the office, but embrace a new field, and are beyond the scope or range of the office as it theretofore had existed and functioned, an increase of salary is not violative of the constitutional inhibition above discussed. "For new and additional duties, an incumbent of public office may be awarded extra compensation without violating the constitutional inhibition of increase of salary during the term." *Tayloe* v. *Davis,* 212 Ala. 282, 102 So. 433, 40 A. L. R. 1052. Consult, *Moore* v. *Moore,* 147 Va. 460, 137 S. E. 488, 51 A. L. R. 1517; *Groesbeck* v. *Fuller,* 216 Mich. 243, 184 N. W. 870, 21 A. L. R. 249; 22 Ruling Case Law, p. 534.

The purpose of the said constitutional provision is to establish definiteness and certainty as to the salaries

418

pertaining to public officers. It is deemed that as a general proposition better service will be rendered if the matter of salary is laid at rest at the outset. In such situation, an incumbent and his friends have no incentive for "logrolling" to bring about an increase, nor are other persons, whether their motives be prompted by economy or vindictiveness, moved or induced to attempt to bring about a reduction. Such background, however, was intended to be applicable where the duties of the office remain substantially the same, or where enlargements, if any, are allied with the responsibilities of the office as they existed at the time the incumbent assumed the office. But if an entirely new field of responsibility is opened, there is presented a situation not within the purview of the constitutional inhibition. So, where, as at bar, the duties of an office are vastly changed because of an abrupt departure in legislative policy, there is presented a situation beyond the import of the said constitutional provision.

Thus, we reach the conclusion, on the basis of the factual situation in Ohio County and not with respect to the County Unit Law in its general operation, that in said county there was such radical change of duties of the county superintendent that an increase of his salary was not within the constitutional inhibition. This leads us to share the conclusion of the trial court that the relator is entitled to the above stated unpaid residue of salary.

Therefore, we affirm the judgment of the circuit court.

*Affirmed.*