WILLIAM DELARDAS, *etc.*

*v.*

THE COUNTY COURT OF MONONGALIA COUNTY, WEST VIRGINIA, JOHN PATRICK BALL, *President and Commissioner*, MELVIN B. REXROAD *and* JOSEPH E. KUN, *Commissioners*

(No. 13156)

Submitted January 12, 1972.     Decided February 22, 1972.

Rehearing Denied March 23, 1972.

*William Delardas,* pro se.

*Joseph A. Laurita, Jr.,* Prosecuting Attorney, Monongalia County, for respondents.

*Henry C. Bias, Jr., Chauncey H. Browning, Jr.,* Attorney General, *Cletus B. Hanley,* Deputy Attorney General, *Leo Catsonis,* amicus curiae.

CALHOUN, PRESIDENT:

This case involves a proceeding in mandamus instituted in this Court by William Delardas in his own right as a

citizen, voter and taxpayer of Monongalia County, and also on behalf of all other citizens, voters and taxpayers of that county who are similarly situated, against the County Court of Monongalia County and John Patrick Ball, Melvin B. Rexroad and Joseph E. Kun, the three county commissioners who constitute the county court. These three county commissioners may be referred to hereafter in this opinion as the respondents.

The petitioner, William Delardas, alleged in his mandamus petition that the three county commissioners, acting in their official capacities, raised their several official salaries in 1971 in violation of the provisions of Section 38 of Article VI of the Constitution of West Virginia. The portion of that constitutional provision which is most pertinent to this case is the following language: "Nor shall the salary of any public officer be increased or diminished during his term of office, * * *." This allegation in the mandamus petition raises the primary and basic question presented for decision. The case does not involve any material issue of disputed fact.

The case was submitted for decision upon the mandamus petition; upon the answer of the respondents; upon the brief and oral argument of William Delardas, who, though not a lawyer, was permitted to appear before the Court in his own proper person; upon the brief and oral argument of counsel for the respondents; and upon various briefs amici curiae, one being in support of the prayer of the mandamus petition and all others except one being in opposition thereto. The exception referred to immediately above is a brief amicus curiae filed in behalf of the State Tax Commissioner. It embodies a helpful discussion of all aspects of the case a .d of the questions presented for decision. To some extent at least, this brief seeks guidance for the benefit of the State Tax Commissioner and the various county officials of the state in the interpretation and application of pertinent statutes to which specific reference will be made hereafter in this opinion.

The prayer of the mandamus petition is as follows: (1) that the respondents be required to cease "further collections of salary increases illegally obtained"; (2) that the respondents be required to return "to the proper authority" all amounts illegally received by them since July 1, 1971; and (3) that the County Court of Monongalia County and the respondent county commissioners "take immediate steps to remove $4,000 from the budget item for county commissioner salaries and restore the item to $15,000."

The petitioner, as a citizen and a taxpayer of Monongalia County, suing in his own behalf and in behalf of all other taxpayers of that county, has a right to maintain the mandamus proceeding in order to test the constitutionality of the action of the respondents in increasing their official salaries. *Spilman* v. *City of Parkersburg*, 35 W.Va. 605, pt. 3 syl., 14 S.E. 279; 16 AM. JUR. 2d, *Constitutional Law*, Section 127, page 323; 16 C.J.S., *Constitutional Law*, Section 80, page 247.

The mandamus petition was filed in this Court on November 11, 1971. The respondents at that time were occupying their several official positions as county commissioners pursuant to election for six-year terms of office which had commenced as follows: Melvin B. Rexroad, January 1, 1967; John Patrick Ball, January 1, 1969; and Joseph E. Kun, January 1, 1971. Prior to July 1, 1971, each of the three respondents was paid a monthly salary of $400 in accordance with the provisions of Code, 1931, 7-1-5 (33), as amended. During the 1971 calendar year and prior to July 1 of that year, the respondent county commissioners, acting as the County Court of Monongalia County, undertook to increase their respective salaries with the purpose of causing the increases to become effective July 1, and consequently they were paid salaries at a monthly rate of $500 each for the months of July, August, September and October, 1971. Presumably they have since continued to be paid monthly salaries at the increased rate of $500 a month.

While the increase in salaries appears on its face to be clearly violative of the constitutional inhibition in question, the respondents undertake in this case to justify their actions in increasing their several salaries by their reliance upon the provisions of Chapter 23, Acts of the Legislature, Regular Session, 1971, which was enacted on March 13, 1971, and amended slightly by the enactment on April 28, 1971, of Chapter 13, Acts of the Legislature, First Extraordinary Session, 1971. Both enactments were made effective July 1, 1971. The statute thus enacted and amended will be referred to hereafter in this opinion as the Act or as the 1971 Act. Its purpose, generally speaking, was to classify all the counties of the state in seven categories based upon the total assessed valuations of all classes of property in the several counties; to fix maximum and minimum salaries to be paid to county officials of counties in each category; and to authorize the county court of each county to fix the salaries of the county officials of the county at an amount no greater than the maximum and no less than the minimum amounts specified by the Act. On the basis of the assessed valuation of all classes of property, Monongalia County is in Class II under the provisions of the Act. The Act provides that, in Class II counties, the annual salaries or compensation of county commissioners shall be fixed by the county courts of such counties at a minimum of $6,000 and a maximum of $9,000.

In *Harbert v. The County Court of Harrison County*, 129 W.Va. 54, 39 S.E.2d 177, a case in which the Court considered and applied the constitutional provision which is involved in the instant case, the Court stated (129 W. Va. 54, 61, 39 S.E.2d 177, 184):

"* * * In express terms, and in language too clear to admit of speculation or interpretation, the people of this State, in the exercise of their sovereign power, have said: 'Nor shall the salary of any public officer be increased or diminished during his term of office'. Though these words of ordinary import and meaning are perhaps directed to the Legislature because placed in the article dealing with that department of government,

they are comprehensive and they are not so limited in their application. *They apply to all the agencies of government."* (Italics supplied.)

Inasmuch as the defense of the respondents in this case is based solely on the provisions of the 1971 Act, we are necessarily required in this case to determine whether the statutory enactment in question is violative of the portion of Section 38 of Article VI of the Constitution of West Virginia which clearly provides that the salary of any public officer shall not be increased or diminished during his term of office. The purpose of this constitutional provision, as stated in *Harbert* v. *The County Court of Harrison County,* 129 W.Va. 54, 62-63, 39 S.E.2d 177, 185, is as follows:

"* * * The command of the Constitution that the salary of no public officer shall be increased or diminished during his term of office, is a wise and salutary mandate. Its purpose is to establish definiteness and certainty in the salaries of public officers and to protect and safeguard the independence, the security, and the efficiency of the occupant of every public office. It assures the people that those who serve them as public officers shall give their services during their terms for the amount of compensation for which they were willing to serve and have been selected, and for which they were expected by the people to serve at the time of their entrance upon the performance of their duties. It prevents attacks upon officials by those who may be possessed, at any time of the means and the will to influence or control their course of conduct through added income at public expense; and it removes the possibility of increasing in that manner the financial burden of the people by those who possess and exercise the power of government and the authority of public office. The benefits which result from the operation of this provision of the Constitution promote sound and orderly administration of government, and this provision may not be dispensed with, circumvented, or ignored."

The constitutional provision here involved does not inhibit an increase in the amount of the salary of a public

officer during the term of his office if, in connection with such increase, the legislature imposes upon the officer new and additional duties which are not mere incidents of his office but which embrace a new field, beyond the scope and range of the office as it theretofore had existed and functioned. The general rule applicable to cases of that character is stated in the syllabus of *Springer* v. *Board of Education of Ohio County,* 117 W.Va. 413, 185 S.E. 692, as follows:

"Where the duties newly imposed on a public official by the legislature are not mere incidents of the office which he holds, but embrace a new field, and are beyond the scope and range of the office as it theretofore had existed and functioned, a concurrent legislative increase of salary of such official is not violative of West Virginia Constitution, article 6, section 38, which inhibits the increasing of a public official's salary within his term of office."

To the same effect, see *Harbert* v. *The County Court of Harrison County,* 129 W.Va. 54, 68, 39 S.E.2d 177, 187-88; *Henritze* v. *The County Court of McDowell County,* 129 W.Va. 81, 39 S.E.2d 194.

The portions of the 1971 Act which are most pertinent to this case are the portions thereof which amended and partially reenacted the preexisting provisions of Article 7 of Chapter 7, Code, 1931, as previously amended. The statutory provisions thus amended and reenacted, generally speaking and so far as pertinent to this case, relate to the salaries of county officials of the various counties of the state.

Prior to the effective date of the 1971 Act, Section 1 of Article 7 of Chapter 7, Code, 1931, as amended, fixed the salaries of sheriffs of all the fifty-five counties of the state; Section 2 similarly fixed the salaries of clerks of county courts; Section 3 fixed the salaries of clerks of circuit courts; Section 4 fixed the salaries of persons holding offices of both clerk of the county court and clerk of the circuit court; and Section 5 fixed the salaries of prosecuting attorneys. Salaries of commissioners of the county

courts of the several counties of the state were previously specified and fixed by Code, 1931, 7-1-5 (1) to (54), inclusive, as amended. All these preexisting statutes by which the salaries of county officials of the several counties of the state had been prescribed and fixed by the legislature were repealed by the 1971 Act.

The brief amicus curiae filed in behalf of the State Tax Commissioner poses, but does not discuss, the question whether the provisions of the Act undertook to make an unwarranted delegation to the county courts of a legislative power to prescribe and to fix the salaries of county officials. This question has not been raised in any manner by the parties to the mandamus proceeding. We deem it unnecessary, possibly improper, for the Court to consider and to decide this question in this case inasmuch as it has not been raised by any of the parties to the mandamus proceeding by pleadings, briefs or otherwise.

In discussing the statutory provisions which are deemed most pertinent to the constitutional question presented for decision, we shall hereafter refer to the several sections of Article 7 of Chapter 7, Code, 1931, as amended and reenacted by the 1971 Act.

Section 1 undertakes to embody certain legislative findings and a declaration of policy. This section states that "the present system of providing compensation for these offices is antiquated and not conducive to attracting and holding the best qualified people in government service;" and "that it is in the interest of the public to adopt the provisions as hereinafter set forth for the effective operation of county government." It is reasonably obvious that the primary purport and purpose of this section is to declare a legislative policy to form a basis and justification for delegating to county courts power and authority to specify and to fix salaries of various county officials as provided subsequently in the Act. Section 1 embodies something other than mere legislative findings of fact such as were considered in *The State of West Virginia ex rel. The West Virginia Housing Development Fund* v. *Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545.

Section 2 provides for a system for "in-service training programs" for county officials. The portion thereof directly applicable to county commissioners is, in part, as follows: "The state tax commissioner is hereby authorized and directed to establish such in-service training programs for county commissioners * * * as in his opinion will do most to modernize and improve the services of their respective offices." This section provides that each of the county officials therein mentioned "shall participate in the programs established under this section." It provides that the county court is "authorized and directed to expend funds for the purpose of reimbursing such officials * * * for the actual amount expended by them for food, lodging and registration * * * not to exceed thirty-five dollars per day, with mileage not to exceed the rate of ten cents per mile * * * for travel to and from such meetings."

Section 3 provides: "For the purpose of determining the compensation of elected county officials, the counties of the State of West Virginia are hereby grouped into seven classes based on their assessed valuation of property, all classes." The statute then creates the seven classifications of counties based upon assessed valuations of all classes of property in the several counties of the state. Thereafter is the following additional language of Section 3:

"The assessed valuation of property, all classes, that shall be used as the base to determine the class of a county shall be the assessed valuation of property, all classes, of the county as certified by the county assessor, state auditor and county clerk *prior to March twenty-ninth of each year.*

*"Prior to March twenty-ninth of each year,* the county court of each county shall determine the class of the county based upon the assessed valuation of property, all classes, of the county, as certified by the county assessor, state auditor and county clerk in accordance with the table of classes hereinabove set forth. If the county court determines that such assessed valuation is within the minimum and maximum limits of a class above or below those of *the classification then current, it shall record the new classification of the county*

with the state auditor and state tax commissioner and record its action on its county court record. If a county court fails to record *a new classification or fails to determine a new classification, the classification of the county for the current fiscal year shall be and remain its classification for the next fiscal year following* except as provided in the next succeeding paragraph.

"The classification of each county *for the next fiscal year* shall be subject to review by the state tax commissioner. He shall determine if the classification of each county is correct based on the final assessed valuation of property, all classes, certified to him by the county assessor, state auditor and county clerk. If the state tax commissioner finds that a county is incorrectly classified he shall notify the county court of that county promptly of his finding and in any case shall notify the county court prior to June thirtieth of *that current fiscal year. Any county court so notified shall correct its classification immediately and make any necessary corrections in the salaries of its elected county officials for the next fiscal year.*

"Notwithstanding any other provision of this chapter, *no salary* of any member of a county court, sheriff, county clerk, circuit clerk, assessor, prosecuting attorney, or other public officer whose salary is governed by this chapter, *shall be reduced during the term for which such public officer is serving.*" (Italics supplied.)

Section 4 specifies the minimum and the maximum range of salaries to be paid in each county to the county commissioners, the sheriff, the county clerk, the circuit clerk and the prosecuting attorney, and contains the following additional language:

"For the purpose of determining the compensation to be paid to the elected county officials of each county, the following minimum and maximum compensation limits for each county office by class are hereby established and shall be used by each county court in determining the compensation of each of their county officials including compensation of members of the county court:

\* \* \*

"*When the classification of a county is changed* as provided in this article, the *compensation of*

*each elected county official of that county for each fiscal year thereafter* shall be set within the minimum and maximum compensation limits established for each elected county official in that class *until the classification again changes."* (Italics supplied.)

Section 5 relates to "compensation" to be paid to county commissioners. It includes the following language:

" * * * The compensation shall be determined by each county court for its own members. The compensation of a county court member shall never be fixed in an amount less than the minimum limit or more than the maximum limit in effect for the class in which that county is *for that fiscal year.* The compensation shall be reasonable and proper, and due consideration shall be given to the duties, responsibilities and the work required of the individual members of each county court: * * *

" (c) *Compensation for all county court members shall be fixed by order of the county court before March twenty-ninth of each year and shall take effect on the first day of July following and shall be in effect throughout that fiscal year. Each county court shall enter its order upon its county court record.*

" (d) The compensation of *all members of each county court* under subsection (b) of this section shall *be the same for any given fiscal year regardless of any given member's tenure or term of office."* (Italics supplied.)

Section 6 deals with "compensation" to be paid to elected county officials other than the county commissioners as follows:

"The county court of each county shall determine the compensation to be paid to the county clerk, circuit clerk, joint clerk of the county and circuit court, if any, sheriff, county assessor and prosecuting attorney for its county. The compensation of an elected county official shall never be fixed in an amount less than the minimum limit or more than the maximum limit in effect for the

class in which that county is *for the fiscal year involved.* The compensation shall be reasonable and proper and due consideration shall be given to the duties, responsibilities and the work required of these elected county officials: *Provided,* that any county clerk, circuit clerk, joint clerk of the county and circuit court, if any, county assessor, sheriff and prosecuting attorney in a Class I county shall devote full time to his public duties to the exclusion of any other employment, and any county clerk, circuit clerk, joint clerk of the county and circuit court, if any, county assessor, sheriff and prosecuting attorney in a Class II county receiving at least eighty percent of the maximum compensation *shall devote full time to his public duties to the exclusion of any other employment.*

"If a county court *for any fiscal year* fixes the compensation of its members or of any other elected official of such county in any amount in excess of the minimum compensation limit in effect for such county court or such other elected official for the class in which the county is *for that fiscal year,* then such county court shall fix the compensation of all other elected officials in that county *for such fiscal year* so that the compensation of such officials will be the same percentage above the minimum as the compensation of the members of such county court or such other official is above the minimum: * * *.

"Compensation for the county clerk, circuit clerk, joint clerk of the county and circuit court, if any, sheriff, county assessor and prosecuting attorney *shall be fixed by order of the county court before March twenty-ninth of each year and shall take effect on the first day of July following and shall remain in effect throughout that fiscal year. Each county court shall enter its order upon its county court record.*" (Italics supplied.)

We are of the opinion that the provisions of the Act which we have previously quoted, and particularly portions thereof which have been italicized in this opinion, clearly disclose a legislative intent and purpose to confer upon county courts authority and power to increase the salaries of county officials during the terms of office to

which they have been elected and to increase such salaries, from time to time on a fiscal year basis.

The brief of counsel for the respondents admits, at least tacitly, that such was the intent and purpose of the legislature, and that such legislative intent and purpose are made manifest by the language of the Act. Counsel for the respondents contends that it is the duty of the Court in this case to give effect to the legislative intent thus clearly expressed. In that connection, counsel relies upon principles stated in *Pond Creek Pocahontas Company* v. *Alexander,* 137 W.Va. 864, 74 S.E.2d 590, and other prior decisions of this Court which have dealt with the duty of courts, in the construction and application of a statute, to ascertain and to give effect to the legislative intent expressed in the statute. The contention thus made by counsel merely tends to substantiate and to fortify our opinion that the Act is unconstitutional in part for the reason that it manifestly undertakes to confer upon the county courts of the state authority to increase salaries of elected county officials during the terms of office for which they were elected. The legislature has no unrestricted power to do so and obviously the legislature cannot confer such power or authority upon the county courts of the state.

Counsel for the respondents contends that the Act is not violative of the constitutional inhibition against increasing salaries of public officers during their terms of office for the reason that the Act imposes new and additional duties upon the respondents and other county officials of the state in that Section 2 requires county officials to participate in "in-service training programs." In that connection counsel relies upon principles stated in the syllabus of *Springer* v. *Board of Education of Ohio County,* 117 W.Va. 413, 185 S.E. 692, which we have quoted previously in this opinion. Springer was elected to the office of county superintendent of schools of Ohio County and entered upon the discharge of his official duties on July 1, 1931. Thereafter, in 1933, the County Unit School Law was enacted by the legislature and, as a consequence thereof, the nature of Springer's office was transformed

and his official duties were vastly increased as stated by the Court in the opinion in that case. By reason of the 1933 legislative enactment, Springer's duties were changed from a more or less perfunctory supervision of the schools of a small portion of the county to an official position involving increased duties on a countywide basis. We are of the opinion that the *Springer* case is clearly distinguishable from the instant case.

The requirement of the 1971 Act that county officials participate in "in-service training programs" does not impose upon the respondents or other county officials duties which embrace a new field beyond the scope and range of the several offices as they existed and functioned theretofore. Rather, we believe, the requirement of participation in "in-service training programs" represent an incident of the various county offices as they existed prior to July 1, 1971.

It is to be expected that all county officials, including these respondents, will be interested in constantly improving their fitness for the efficient performance of the duties of the offices to which they have been elected. It appears from the various briefs of counsel in this case that county officials, prior to July 1, 1971, participated upon a voluntary basis in programs designed to enable them more effectively to perform the duties of their several official positions and that they were reimbursed for reasonable expenses which they incurred in that connection.

For reasons stated, we are of the opinion that the provisions in Section 2 of the Act requiring county officers to participate in "in-service training programs" did not impose upon the respondents or other county officials similarly situated new and additional duties of such nature or character as to warrant an increase in their salaries during the terms of the several offices to which they were previously elected.

Section 20 of the Act contains a "severability" provision in customary legislative language. It is settled by

many prior decisions of this Court that, if the unconstitutional portions of a statutory enactment are clearly distinct and separable from the remaining portions of the enactment, the constitutional invalidity of the separable portion will be held not to affect the validity of the remaining portion thereof, if the remaining portion is complete in itself, is capable of being executed independently of the constitutionally invalid portion, and is valid in other respects. In such circumstances, the remaining portion will be upheld and will not be regarded as invalid. *State ex rel. State Building Commission of West Virginia* v. *Bailey,* 151 W.Va. 79, pts. 4 and 5 syl., 150 S.E.2d 449; *State* v. *Heston,* 137 W.Va. 375, pt. 6 syl., 71 S.E.2d 481; *Lingamfelter* v. *Brown,* 132 W.Va. 566, 52 S.E.2d 687. See also *Robertson* v. *Hatcher,* 148 W.Va. 239, 135 S.E.2d 675; 16 Am. Jur. 2d, *Constitutional Law,* Sections 181 and 182, pages 409-412.

The portions of the 1971 Act with which we are primarily concerned in this case are the portions thereof which amended and partially reenacted the provisions of Article 7 of Chapter 7 of Code, 1931, as previously amended. Therefore, references hereafter in this opinion will be made to the various sections of Article 7 of Chapter 7 of Code, 1931, as amended and reenacted by the 1971 Act.

In the brief amicus curiae filed in behalf of the County Court of Cabell County, counsel apparently asserts that only Sections 1, 2, 3, 4, 5 and 6 of Article 7 of Chapter 7, as designated in the Act, are violative of the constitutional inhibition against increasing or diminishing the salary of any public officer during his term of office; that such unconstitutional provisions are separable from the remaining portions of the Act; and that such remaining portions, being Sections 7 to and including Section 20, are not violative of the constitutional provision in question. The brief amicus curiae filed in behalf of the State Tax Commissioner apparently agrees with the views expressed in this respect, except that the brief amicus curiae filed in behalf of the State Tax Commissioner asserts that the provisions of Section 2, relating to "in-service training

programs" for county officials, are clearly separable from any portion of the Act which might properly be held in this case to be unconstitutional and that, therefore, Section 2 should be held not to be unconstitutional. We agree with this contention. The "in-service training programs" prescribed by Section 2 are mere incidents of the duties of the county officials as such duties existed prior to July 1, 1971. These statutory provisions do not embrace a new field, beyond the scope and range of the official positions as they theretofore existed and functioned, and they are unrelated to the provisions of the 1971 Act which dealt with increases in salaries of county officials.

For reasons stated in this opinion, the Court holds that Sections 1, 3, 4, 5 and 6 of Article 7 of Chapter 7, Code, 1931, as amended and reenacted by the 1971 Act, are violative of the provisions of Section 38 of Article VI of the Constitution of West Virginia. Portions of the enacting clause of the 1971 Act which specifically repealed the following preexisting provisions of Code, 1931, as amended, relating to the prescribed salaries of county officials, are inseparable from the unconstitutional portions of the Act to which reference has been made previously in this opinion and are therefore unconstitutional and invalid: 7-1-5(1) to (54), inclusive, relating to salaries of county commissioners; 11-2-5 and 11-2-5(1) to (55), inclusive, relating to salaries of assessors. The 1971 Act amended and reenacted the provisions of Article 7, Chapter 7, Code, 1931, as previously amended, by omitting and deleting the following provisions: 7-7-1 and 7-7-1(1) to (55), inclusive, relating to salaries of sheriffs; 7-7-2 and 7-7-2(1) to (52), inclusive, relating to salaries of county clerks; 7-7-3 and 7-7-3(1) to (52), inclusive, relating to salaries of circuit clerks; 7-7-4, relating to salaries of joint clerks of county courts and circuit courts; 7-7-5 and 7-7-5(1) to (55), inclusive, relating to salaries of prosecuting attorneys. To the extent that all these preexisting statutes relating to salaries of county officials have been repealed, the 1971 Act is violative of the provisions of Section 38 of Article VI of the Constitution of West Virginia.

We must assume that the legislature intended to repeal these preexisting statutory provisions relating to salaries only on the assumption that, in lieu thereof, the Act made a constitutional and valid provision for having the salaries of county officials fixed by the various county courts of the state. In relation to the possible effect upon the preexisting statutes prescribing salaries of county officials arising from the unconstitutionality of portions of the 1971 Act which undertook to repeal the preexisting statutes, see *State ex rel. Heck's Discount Centers, Inc.* v. *Winters,* 147 W.Va. 861, pt. 9 syl., 132 S.E.2d 374; Annot., 102 A.L.R. 802.

We are not concerned in this case with the provisions of Chapter 24, Acts of the Legislature, Regular Session, 1971, which added new sections to Article 2 of Chapter 11, Code, 1931, as amended. This 1971 enactment imposed new and additional official duties upon the county assessors of the state and, in consequence thereof, provided for the payment of specified compensation to the assessors of the several counties of the state in addition to their regular official salaries elsewhere provided by statute.

The Court holds in this case merely that portions of the 1971 Act are violative of the provisions of Section 38 of Article VI of the Constitution of West Virginia. We are not called upon to decide and therefore we do not undertake in this case to decide whether the Act, or one or more portions thereof, may be invalid for one or more other reasons.

This case, of course, involves only the increase in salaries of the three respondents as commissioners of the County Court of Monongalia County. It necessarily follows, nevertheless, that the decision of the Court in this case is applicable to all other county officials of the state in situations indistinguishable from the situations of the respondents in this case.

The respondents as county commissioners have a mandatory, nondiscretionary duty to comply with the clear

language of Section 38 of Article VI of the Constitution of West Virginia. It is settled by many prior decisions of this Court that mandamus is a proper remedy by which to require the discharge by a public officer of a mandatory, nondiscretionary legal duty. *State ex rel. The West Virginia Housing Development Fund* v. *Copenhaver*, 153 W. Va. 636, pt. 1 syl., 171 S.E.2d 545; *State ex rel. Greenbrier County Airport Authority* v. *Hanna*, 151 W.Va. 479, 153 S.E.2d 284.

For reasons previously stated by the Court in this opinion, a writ of mandamus is awarded as prayed for commanding each of the respondents forthwith to cease receiving and retaining payment of his official salary as county commissioner for the amount of the attempted increase thereof; and also commanding each of the respondents forthwith to repay to the sheriff as ex officio treasurer of Monongalia County all sums of money received since July 1, 1971, in excess of the amount of the salary theretofore fixed and prescribed by statute for his services as county commissioner. The sheriff of each county is ex officio treasurer of the county by reason of the provisions of Code, 1931, 7-5-1. Concerning the duty of each of the respondents to account for money improperly received as compensation since July 1, 1971, see *Schwartz* v. *The County Court of Hancock County*, 136 W.Va. 626, 645, 68 S.E.2d 64, 74.

The Court does not grant the prayer of the mandamus petition that the respondents as the County Court of Monongalia County be commanded to take immediate steps to remove $4,000 from the county budget for the 1971-72 fiscal year and to restore to $15,000 the item in that budget relating to compensation of commissioners of the county court. We are of the opinion that matters of this character involve fiscal and administrative duties imposed by law upon the State Tax Commissioner and county officials.

*Writ awarded.*