STATE *ex rel.* JAMES R. GOODWIN, *etc.*

*v.*

J. ROBERT ROGERS, *Commissioner, et al.*

(No. 13330)

Decided July 29, 1975.

*Leo Catsonis* for relators.

*J. Robert Rogers, Mat D. Bouldin, Pros. Atty.*, for respondents.

HADEN, CHIEF JUSTICE:

This is an original application by Relator, James R. Goodwin, individually, and as President of and Commissioner of the County Commission of Boone County, West Virginia, for a writ of mandamus to compel J. Robert Rogers and E. E. Lewis, the two other Commissioners of the County Commission of Boone County, O. H. Carson, Jr., Clerk of the County Court of Boone County, and John Protan, Sheriff of Boone County, to issue the Relator monthly salary checks in the gross amount of $300.00 as compensation for services as Commissioner of the Boone County Commission for the month of January

1973 and each month thereafter as required by *W. Va. Code* 1931, 7-1-5a, as amended.

Based upon a refusal of the Respondents to issue the salary check as demanded by the Relator, and based upon the petition filed in this Court, a rule was issued requiring the Respondents to show cause why they should not be required to comply with the plain provisions of the statute. This proceeding was submitted for decision upon the Relator's petition, the demurrer of the Respondents, and the briefs and oral arguments made in behalf of the respective parties.

The question presented for decision is whether certain provisions of Chapter 21, *Acts of the Legislature*, Regular Session 1971,[1] authorizing increased compensation to Relator and other elected county officials, violates West Virginia Constitution, Article VI, Section 38.

James R. Goodwin was duly elected in November 1970 as a Commissioner of the County Court of Boone County, West Virginia, which is now known as the County Commission of Boone County, West Virginia. His six-year term of office commenced January 1, 1971. Prior to and at the time of taking office, the annual salary for service as a Commissioner of the Boone County Commission was established by statute in the amount of $2,400.00.[2] For the period of time commencing January 1, 1971, and ending December 31, 1972, the Relator was compensated at the rate of $2,400.00 annually and was paid in gross monthly salary checks of $200.00.

---

[1] Hereinafter referred to as the "1972 Act," this omnibus salary measure: *repealed W. Va. Code* 1931, 7-1-5(1) through and including 7-1-5(54), 11-2-5(1) through and including 11-2-5(55); *amended and reenacted. W. Va. Code* 1931, 7-1-5 and 7-7-1 *et seq.* (entirety of Article 7); *amended and added W. Va. Code*, 1931, 7-1-3q and 3r, 7-1-4 and 7-1-5a. Accordingly, references to a particular *Code* section, e.g. "*W. Va. Code* 1931, 7-1-5a, as amended" are to be regarded as specific references within the 1972 Act, unless otherwise qualified.

[2] This salary is, in fact, additional compensation to the historical compensation of two dollars per day to which every county commissioner is entitled to for actual attendance and services in court. *W. Va. Code* 1931, 7-1-4, as amended (*W. Va. Code*, 1868, c. 39 § 15).

Effective March 11, 1972, the Legislature enacted Chapter 21, *Acts of the Legislature,* Regular Session 1972 which, among other things, created and established county commissions on intergovernmental relations and county commissions on crime, delinquency and correction. See *W. Va. Code* 1931, 7-1-3q and 3r, as amended. In that legislation, the prospective intergovernmental relations commissioners were charged as follows:

"This commission shall assemble and disseminate information concerning federal programs which provide financial assistance to the residents of their county. Such programs shall include but not be limited to,

1. Public Health Service Act, as amended. Public Law 89-97.

2. Housing and Urban Development Act of 1968, as amended.

3. Health insurance for the aged under Public Law 89-97, as amended.

4. Supplementary medical insurance for the aged under Public Law 89-97, as amended.

5. Housing and Urban Development Act of 1968, as amended, as it pertains to interest reduction payments and rental and cooperative housing for lower income families.

6. Housing Act of 1964, as amended, by Public Law 85-560, relating to rehabilitation loans.

7. The Emergency Employment Assistance Act of 1971.

8. Job opportunity programs and on the job training under various federal acts.

9. Neighborhood improvement and development programs under various federal acts.

10. Library and other public facility improvement programs under various federal programs.

The commission shall cooperate with municipalities, other county agencies, state and federal

agencies to effect the purposes of this section."
[7-1-3q, as amended].

The intergovernmental relations commission was to be composed of the members of the county court and such other members appointed by them. The clerk of the county court was designated by statute as executive secretary of the commission and required, as such, to attend all meetings of the commission, keep a record of the proceedings, assemble and disseminate information required by the commission and perform such other duties as required by the commission to effectuate the purposes of the legislation.

The 1972 Act also created and established county commissions on crime, delinquency and correction and required that the commissions "... collect and compile all data and other information with respect to police agencies, courts of record and justice of peace courts, prosecution of crimes, probation, jails, juvenile detention facilities, and such other matters as might be concerned with the total criminal justice system." Further, the commissions were charged to "... work closely with the governor's committee on crime, delinquency and correction ...; analyze the data and information herein required, ... determine federal funds available under the provisions of the state plan developed by the ... governor's committee ..., and ... make recommendations to the governing body with respect to priorities in the expenditure of funds." [7-1-3r, as amended].

The crime, delinquency and correction commission was to be composed of the members of the county courts and such others appointed by them. The clerk of the circuit court was designated by statute as the executive secretary of the commission and required, as such, to attend all meetings, keep a record of the proceedings, collect and compile such data and information as may be required by the commission and perform such other duties required by the commission to effectuate the purposes of the legislation.

By reason of the new and additional duties placed upon county commissioners, county clerks and circuit

clerks by *W. Va. Code* 1931, 7-1-3q and 3r, as amended, *supra*, the Legislature further provided in the 1972 Act authorization for the payment of additional compensation beginning January 1, 1973 to all such county officials so affected.

As respects county commissioners, the Legislature repealed the former provisions for compensation found in *W. Va. Code* 1931, 7-1-5(1)-(54), as amended, and adopted in substitution thereof *W. Va. Code* 1931, 7-1-5a, as amended, providing as follows:

"In addition to the payment for services in court as described in section four of this article, all county commissioners shall be paid compensation out of the county treasury in amounts hereafter set forth for each class of county as determined by the provisions of section three, article seven, chapter seven: *Provided,* That as to any county having a tribunal in lieu of a county court, the county commissioners of such county may be paid less than the minimum compensation limits of the county court for the particular class of such county.

| | |
|---|---|
| Class I | $12,600 |
| Class II | $ 9,000 |
| Class III | $ 7,500 |
| Class IV | $ 5,400 |
| Class V | $ 3,600 |
| Class VI | $ 2,100 |
| Class VII | $ 900 |

The compensation hereinabove provided shall be paid on and after January one, one thousand nine hundred seventy-three."

The seven salary classifications provided for in *W. Va. Code* 1931, 7-1-5a, as amended, were derived from a statutory formula established and set forth in *W. Va. Code* 1931, 7-7-3, as amended, which classified counties into seven categories based upon minimum and maximum assessed valuation of property, all classes, located within the county. That statute provides as follows:

"For the purpose of determining the compensation of elected county officials, the counties of

the state of West Virginia are hereby grouped into seven classes based on their assessed valuation of property, all classes. These seven classes and the minimum and maximum valuation of property, all classes, established to determine the classification of each county are as follows:

| Class | Minimum Assessed Valuation of Property, All Classes | Maximum Assessed Valuation of Property, All Classes |
|---|---|---|
| Class I | $600,000,000 | No Limit |
| Class II | $450,000,000 | $599,999,999 |
| Class III | $200,000,000 | $449,999,999 |
| Class IV | $100,000,000 | $199,999,999 |
| Class V | $ 50,000,000 | $ 99,999,999 |
| Class VI | $ 15,000,000 | $ 49,999,999 |
| Class VII | 0 | $ 14,999,999 |

The assessed valuation of property, all classes, that shall be used as the base to determine the class of a county shall be the assessed valuation of property, all classes, of the county as certified by the county assessor, state auditor and county clerk prior to March twenty-nine, one thousand nine hundred seventy-two.

Prior to March twenty-nine, one thousand nine hundred seventy-six and each fourth year thereafter, the county court of each county shall determine if the assessed valuation of property, all classes, of the county, as certified by the county assessor, state auditor and county clerk, is within the minimum and maximum limits of a class above or below the class in which the county then is. If the county court so determines, it shall record the new classification of the county with the state auditor and state tax commissioner and record its action on its county court record.

The classification of each county shall be subject to review by the state tax commissioner. He shall determine if the classification of each county is correct based on the final assessed valuation of property, all classes, certified to him by the county assessor, state auditor and county

clerk. If he finds that a county is incorrectly classified he shall notify the county court of that county promptly of his finding and in any case shall notify the county court prior to June thirtieth of that current fiscal year. Any county court so notified shall correct its classification immediately and make any necessary corrections in the salaries of its elected county officials for the next fiscal year."

As respects county clerks, circuit clerks and all elected county officials other than county commissioners, *W. Va. Code* 1931, 7-7-4, as amended, specified compensation payable to those officials again based upon the seven classification formulas provided in *Code* 7-7-3, *supra. W. Va. Code* 1931, 7-7-4, as amended, provides as follows:

"For the purpose of determining the compensation to be paid to the elected county officials of each county, the following compensations for each county office by class are hereby established and shall be used by each county court in determining the compensation of each of their county officials other than compensation of members of the county court:

|           | Sheriff  | County Clerk | Circuit Clerk | Assessor | Prosecuting Attorney |
|-----------|----------|--------------|---------------|----------|----------------------|
| Class I   | $12,000  | $15,000      | $15,000       | $12,000  | $22,000              |
| Class II  | 8,400    | 12,000       | 12,000        | 8,400    | 13,500               |
| Class III | 10,000   | 13,000       | 13,000        | 12,000   | 14,000               |
| Class IV  | 10,000   | 10,800       | 10,800        | 10,000   | 13,500               |
| Class V   | 9,000    | 9,600        | 9,600         | 9,600    | 9,600                |
| Class VI  | 6,900    | 6,900        | 6,900         | 6,900    | 6,900                |
| Class VII | 4,200    | 3,000        | 2,400         | 3,600    | 2,100                |

Any county clerk, circuit clerk, joint clerk of the county and circuit court, if any, county assessor, sheriff and prosecuting attorney of a Class I county shall devote full time to his public duties to the exclusion of any other employment. Notwithstanding the effective date of this act, the compensation provided in this section for sheriffs, assessors and prosecuting attorneys shall become effective January one, one thousand nine hundred seventy-three, and the compensation provided in this section for county clerks, circuit clerks and joint clerks of

county and circuit courts shall become effective January one, one thousand nine hundred seventy-five.

In the case of a county that has a joint clerk of the county and circuit court, the compensation of the joint clerk shall be fixed in an amount twenty-five percent higher than the compensation would be fixed for the county clerk if it had separate offices of county clerk and circuit clerk."

As respects additional compensation for county clerks for the period of time beginning January 1, 1973 and ending December 31, 1974, *W. Va. Code* 1931, 7-7-5, as amended, provides as follows:

"In addition to the salary provided for the county clerks in section four of this article, the county court of each county shall pay additional compensation in the amounts hereinafter set forth in this section to each clerk for the performance of the new and additional duties required of the clerk by the provisions of section three-q, article one, chapter seven. Such additional compensation shall be paid for by the calendar years ending December thirty-first, one thousand nine hundred seventy-three and December thirty-first, one thousand nine hundred seventy-four, in the following amounts:

|  | Calendar year ending Dec. 31, 1973 | Calendar year ending Dec. 31, 1974 |
| --- | --- | --- |
| Class I | $3,000 | $3,000 |
| Class II | $1,000 | $1,000 |
| Class III | $2,400 | $2,400 |
| Class IV | $2,100 | $2,100 |
| Class V | $1,500 | $1,500 |
| Class VI | $1,200 | $1,200 |
| Class VII | $ 600 | $ 600 |

There shall be no additional compensation paid for these duties after the calendar year ending December thirty-first, one thousand nine hundred seventy-four."

As respects additional compensation for circuit clerks for the period of time beginning January 1, 1973 and

ending December 31, 1974, *W. Va. Code*, 1931, 7-7-6, as amended, provides as follows:

"In addition to the salary provided for the circuit clerks in section four of this article, the county court of each county shall pay additional compensation in the amounts hereinafter set forth in this section to each clerk for the performance of the new and additional duties required of the clerk by the provisions of section three-r, article one, chapter seven. Such additional compensation shall be paid for by the calendar years ending December thirty-first, one thousand nine hundred seventy-three, and December thirty-first, one thousand nine hundred seventy-four, in the following amounts:

|  | Calendar year ending Dec. 31, 1973 | Calendar year ending Dec. 31, 1974 |
|---|---|---|
| Class I | $3,000 | $3,000 |
| Class II | $1,000 | $1,000 |
| Class III | $2,400 | $2,400 |
| Class IV | $2,100 | $2,100 |
| Class V | $1,500 | $1,500 |
| Class VI | $1,200 | $1,200 |
| Class VII | $ 600 | $ 600 |

There shall be no additional compensation paid for these duties after the calendar year ending December thirty-first, one thousand nine hundred seventy-four."

In accordance with the provisions of *W. Va. Code* 1931, 7-1-3q and 3r, as amended, the County Court of Boone County created and effectuated the Boone County intergovernmental Relations Commission and the Boone County Commission on Crime, Delinquency and Correction and, thereafter, commenced performance of the new and additional duties placed upon them, as participating county commissioners, by the statutory provisions. The Relator was named Chairman of the Boone County Intergovernmental Relations Commission and participated as a member of the Boone County Commission on Crime, Delinquency and Correction.

Pursuant to *W. Va. Code* 1931, 7-1-5a, as amended, the Relator, as a member of a county court in a Class V county, received a salary check in the gross amount of $300.00 as additional compensation for services performed as Commissioner of the County Court of Boone County for the month of January 1973. After receipt of that check, however, the Relator was advised by the other two members of the court that the check had been issued through inadvertence. Consequently, the court, acting by the majority of its membership, demanded repayment of the excess amount received by Relator in January as compared with his monthly salary check for December 1972. The Respondents, Rogers and Lewis, further advised Relator that they would refuse to pay, or otherwise authorize, any compensation payable to him pursuant to the additional compensation provisions of the 1972 Act until the legality thereof had been determined. By a copy of the letter directed to the Relator, the Respondent commissioners also instructed the Respondents, O. H. Carson, Jr., Clerk of the County Court of Boone County, and John Protan, Sheriff of Boone County, to refuse to honor any subsequent checks payable to the Relator which included the additional compensation provided in the 1972 Act.

By demurrer, the Respondents contend that *W. Va. Const.* art. VI, § 38, prohibits the Relator from receiving increased compensation within his term of office over that compensation payable to the Relator at the inception of his term of office, and that *W. Va. Code* 1931, 7-1-5a, as amended, providing for increased compensation, violates this constitutional provision. In pertinent part, *W. Va. Const.* art. VI, § 38 provides, as follows: "Nor shall the salary of any public officer be increased or diminished during his term of office, . . . ."

The foregoing constitutional provision is a direct and plain inhibition of the Legislature's ability to increase the salary of a public official during the incumbent's term of office. *Delardas v. County Court*, W. Va., 186 S.E.2d 847 (1972); *Schwartz v. County Court*, 136 W. Va. 626, 644, 68 S.E.2d 64, 73 (1951); *Henritze v. County*

*Court*, 129 W. Va. 81, 39 S.E.2d 194 (1946); *Harbert v. County Court*, 129 W. Va. 54, 39 S.E.2d 177 (1946). Such provision, however, does not prohibit increases in the proper case. The rules which distinguish between a legal and proper increase of compensation and an unconstitutional and illegal increase to an incumbent public official are set forth with clarity in *Springer v. Board of Education*, 117 W. Va. 413, 185 S.E. 692 (1936):

> "Where, by legislative action, there are imposed on an officer new duties which are incident and germane to his office as theretofore constituted, such increase of incidental duties will not justify an increase of salary in the face of a constitutional inhibition against increasing the salaries of public officials within their terms.
>
> · · ·
>
> "But where the duties newly imposed by the legislature are not mere incidents of the office, but embrace a new field, and are beyond the scope or range of the office as it theretofore had existed and functioned, an increase of salary is not violative of the constitutional inhibition above discussed. 'For new and additional duties, an incumbent of public office may be awarded extra compensation without violating the constitutional inhibition of increase of salary during the term.' " *Id.* at 417 of the West Virginia Report.

In the *Springer* decision the Court affirmed the decision of the lower court directing that the Ohio County Board of Education pay Springer, its superintendent, a substantial salary increase within his term of office as required by legislation increasing the salary for that office. The Court recognized that, with the adoption of the County Unit system of public education, the duties of the county superintendent greatly increased and changed in character during Springer's term of office from that of nominal supervision of educational activities, within a small part of Ohio County not governed by other school districts, to that of county-wide authority and responsibility for public education. Accordingly, the Court held that "there was such radical change of duties

of the county superintendent that an increase of his salary was not within the constitutional inhibition." *Id.* at 418 of the West Virginia Report.

Comparatively, while applying the rules enunciated in *Springer*, the Court, a few years thereafter, held salary increases for "statutory" judges, granted in term to incumbents whose judicial duties were altered slightly by expansion of jurisdiction, were unconstitutional because the duties imposed, if "new," were, nevertheless, germane to the office as theretofore constituted. *Harbert v. County Court, supra; Henritze v. County Court, supra.*

Most recently, this Court decided that a 1971 omnibus salary measure[3] for all county officials was, in large part, unconstitutional. In *Delardas v. County Court, supra*, William Delardas, a taxpayer and citizen of Monongalia County, attacked the constitutionality of that omnibus salary bill as it affected the commissioners of the county court and other county officials who were to receive salary increases during their incumbent terms of offices. The Respondent county officials and *amicus curiae* argued that the 1971 omnibus act was not violative of the constitutional inhibition because, in addition to granting salary increases, it imposed new and additional duties upon them as public officials to participate in certain "in-service training programs" required by statute and to be conducted by the State Tax Commissioner. Although again giving recognition to the rule of the *Springer* case, that the constitutional provision does not prevent the Legislature from granting salary increases to officers where the Legislature also imposes upon those officers new and additional duties which are not mere incidents of the office, the Court rejected the applicability of the *Springer* rationale. It found to the contrary that:

> "The requirement of the 1971 Act that county officials participate in 'in-service training pro-

---

[3] Chapter 23, *Acts of the Legislature*, Regular Session 1971, as amended and reenacted by Chapter 13, *Acts of the Legislature*, First Extraordinary Session 1971 (Effective July 1, 1971).

grams' does not impose upon the respondents or other county officials duties which embrace a new field beyond the scope and range of the several offices as they existed and functioned theretofore. Rather, we believe, the requirement of participation in 'in-service training programs' represents an incident of the various county offices as they existed prior to July 1, 1971 (the effective date of the salary increase)." *Id.* at 855 of the S.E.2d Reporter.

The Court accordingly held that the requirement that county officials participate in "in-service training programs" did not impose upon them new and additional duties of such nature as to warrant an increase in their salaries during the terms of the offices to which they were previously elected and, in that respect, the omnibus salary bill was unconstitutional. On the other hand, and apparently applying the rationale of the *Springer* decision, the Court held that companion legislation[4] providing for additional compensation for assessors then holding office was lawful, saying:

"This 1971 enactment imposed new and additional official duties upon the county assessors of the state and, in consequence thereof, provided for the payment of specified compensation to the assessors of the several counties of the state in addition to their regular official salaries elsewhere provided by statute." *Id.* at 857 of the S.E.2d Reporter.

The new and additional duties recognized and approved by the Court as regards the office of assessor are now to be found in *W. Va. Code* 1931, 11-2-5a, as amended. The duties imposed in this section required assessors: to complete an annual sales ratio analysis; to prepare for the tax commissioner an annual list of real property transfers of the prior assessment year; to supply a list of new construction and improvements exceeding one thousand dollars of the previous assessment year; to supply an annual list of new and discontinued

---

[4] Chapter 24, *Acts of the Legislature*, Regular Session 1971 (Effective July 1, 1971).

businesses; to provide assistance to the tax commissioner with respect to the taxation classification and valuation of non-utility and public utility property so as to effect uniformity of assessments; and to assist the tax commissioner annually in determining the current use of such real property in his county as the tax commissioner might require in order to accomplish a uniform appraisal and assessment of real property. From a reading of the whole opinion in the *Delardas* case, it is thus apparent that the Court upheld the validity of *W. Va. Code* 1931, 11-2-5a and also 5a(1) through 5a(55), as amended, which provided for additional compensation on the basis of the new and additional duties imposed upon the assessors.

Returning to the case of Commissioner Goodwin, now under consideration, we are of the opinion that the new, additional and substantially different duties placed upon him and his colleagues by the requirements of *W. Va. Code* 1931, 7-1-3q and 3r, as amended, justify and warrant the additional compensation beginning January 1, 1973 provided for his office by *W. Va. Code* 1931, 7-1-5a, as amended. It is readily apparent that the Legislature's requirement, that each county court create a commission on intergovernmental relations and cooperate with municipalities, with counties other than the commissioners' home county, and with state and federal agencies, places significant responsibilities upon the County Commission of Boone County when functioning in the capacity of a commission on intergovernmental relations. We also recognize, as the Legislature did, that the recent enactment of *W. Va. Code* 1931, 8-25-1 *et seq.*, as amended,[5] also known as "The Regional Planning Development Act," requires of county commissioners, new and significant duties which are time-consuming if they are to be rewarding to the counties served by these officials. It is also unquestionable that, by requiring Commissioner Goodwin and his colleagues to participate in the establishment and operation of a Boone County

---

[5] Chapter 5, *Acts of the Legislature,* Second Extraordinary Session 1971 (Effective November 3, 1971).

Commission on Crime, Delinquency and Correction, these officers are entering upon duties heretofore the responsibility of county and state law enforcement agencies and not of county commissioners. In this respect, while county commissioners are relieving some of the burdens previously placed upon the sheriffs of their counties, the West Virginia Department of Public Safety and the Governor's Committee on Crime, Delinquency and Correction, they are, themselves, assuming new tasks which consume more of their time and resources. These duties, as well as the more recent responsibilities placed upon counties and their governing officials by federal and state revenue sharing legislation, are merely representative of the many new requirements of federal and state law placed upon county officials who desire to serve their constituents effectively.

In this regard we have no difficulty in agreeing with the Legislature's findings[6] that the requirements of the

---

[6] *See, Code* 7-7-1 which elaborately and forthrightly records statements of findings and purposes supportive of the 1972 Act, as follows:

"The Legislature hereby takes cognizance of the provisions of chapter twenty-three, acts of the Legislature, regular session, one thousand nine hundred seventy-one, as partially amended by chapter thirteen, acts of the Legislature, first extraordinary session, one thousand nine hundred seventy-one, and the decision of the supreme court of appeals, Case No. 13156, decided by the supreme court on February twenty-two, one thousand nine hundred seventy-two, and the conclusions set forth in the opinion of the court in said proceeding. [*Delardas v. County Court*, W. Va., 186 S.E.2d 847 (1972)].

The Legislature hereby finds as a fact that the Legislature did impose upon the county commissioners in each county broad new and additional duties by the enactment of committee substitute for house bill number three, passed in special session November three, one thousand nine hundred seventy-one, and that the new and additional duties of county commissioners under said act will begin with the organizational meetings of the various regional planning and development councils during the month of May, one thousand nine hundred seventy-two. The Legislature hereby finds as a fact that the new and additional duties imposed under the provisions of the aforementioned house bill number three, are such that they

1972 Act placed new and additional duties upon all county officials affected as Mr. Goodwin is affected by the legislation in question. While we are not compelled to accept legislative statements of intent and findings of fact when the statements contained therein are not warranted in law, we nevertheless give such statements great weight in presuming that legislation does not offend the requirements or inhibitions of the West Virginia Constitution. *State ex rel. State Building Commission v. Moore*, W. Va., 184 S.E.2d 94 (1971); *State ex rel. Hughes v. Board of Education*, 154 W. Va. 107, 174 S.E.2d 711 (1970); *State ex rel. West Virginia Housing Development Fund v. Copenhaver*, 153 W. Va. 636, 171 S.E.2d 545

---

would justify the increase in compensation as provided in section five-a, article one of this chapter without being in violation of the provisions of section thirty-eight, article six of the constitution of West Virginia.

The Legislature hereby further finds, as a fact, that the duties required by sections three-q and three-r, article one, chapter seven as herein provided, constitute new and additional duties for county commissioners and as such justify the increased compensation provided by section five-a, article one, chapter seven without violating the provisions of section thirty-eight, article six of the constitution of West Virginia.

The Legislature hereby further finds as a fact that the duties imposed upon county clerks by the provisions of section three-q, article one, chapter seven, as herein provided, constitute new and additional duties for county clerks and as such justify the additional compensation provided by section five of this article without violating the provisions of section thirty-eight, article six of the constitution of West Virginia.

The Legislature hereby further finds as a fact that the duties imposed upon circuit clerks by the provisions of section three-r, article one, chapter seven, as herein provided, constitute new and additional duties for circuit clerks and as such justify the additional compensation provided by section six of this article without violating the provisions of section thirty-eight, article six of the constitution of West Virginia.

The Legislature hereby further finds and declares that the amendments made by this act to this article are intended to modify the provisions of this article so as to cause the same to be in full compliance with the provisions of the constitution of West Virginia, and to be in full compliance with the decisions of the supreme court of appeals of West Virginia."

(1969); *State ex rel. Appalachian Power Company v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965); *State ex rel. County Court v. Demus*, 148 W. Va. 398, 135 S.E.2d 352 (1964).

Clearly, the new and additional duties created and imposed upon the Relator by the 1972 Act far exceed those duties created and imposed upon assessors in *W. Va. Code* 1931, 11-2-5a, as amended, for which the Court approved additional compensation for assessors in the *Delardas* case, *supra*. It is equally clear that the rule applied in *Springer v. Board of Education, supra*, is controlling and sustains the validity of the provisions authorizing additional compensation to Commissioner Goodwin and those similarly situate.

Likewise, it is clear that the Respondents have a ministerial and nondiscretionary duty to comply with the provisions of the 1972 Act as it relates to the payment of the Relator's salary. Where the law is clear and the duty is so plain in point of law and matter of fact that no element of discretion is left as to the precise mode of its performance, such duty is ministerial and a writ of mandamus is proper to compel its performance. *Walter v. Ritchie*, W. Va., 191 S.E.2d 275 (1972); *State ex rel. Greenbrier County Airport Authority v. Hanna*, 151 W. Va. 479, 153 S.E.2d 284 (1967).

Although the instant application for mandamus filed by Commissioner Goodwin refers in its factual allegations only to his claim for increased compensation, the Respondents' demurrer posited the broader question of the constitutionality of the 1972 Act as it related to all county commissioners, county clerks and circuit clerks similarly situate. Further, the order of this Court granting the rule which commanded the Respondents to show cause why the writ should not be awarded against them was granted in the name of Commissioner Goodwin "and all others similarly situated. . . ." As was likewise held in the *Delardas* case, *supra*, "[i]t necessarily follows ... that the decision of the court in this case is applicable to all other county officials of the state in situations indis-

tinguishable from the [situation] of the [Relator] in this case." 186 S.E.2d 847, 857.

For the reasons expressed in this opinion, the writ of mandamus, as prayed for, is awarded.

*Writ awarded.*